[Filed October 11, 1886.]

## GREEN B. SMITH v. SOL. KING, SHERIFF.

TAXES—SHERIFF, WHEN TO REMIT.—When a tax-payer, against whom property has been improperly assessed, presents to the sheriff charged with the collection of the tax his affidavit, showing such a wrongful assessment, accompanied with a verified list of all his property liable to taxation, in accordance with the provisions of Sec. 99, C. 57, Misc. Laws, it is imperative upon the sheriff to remit the tax so illegally charged.

SAME.—In such case, the sheriff has no authority to inquire into the truth or falsity of the affidavit presented, nor to resort to any other evidence than that specified in the statute. He has just what power the statute confers, and no more.

SAME—STATUTE, WHEN MANDATORY.—The word "may," when used instead of "shall" in a statute prescribing the duty of an officer, ordinarily imports a duty that is directory. But when the public interest is concerned, or the rights of third persons are affected, as in this case, the two words are construed to mean the same thing.

SAME—MANDAMUS.—Mandamus is an appropriate remedy against a sheriff who refuses, upon a proper application therefor, to remit a tax so illegally assessed.

BENTON COUNTY. Plaintiff appeals. Reversed, and peremptory writ of mandamus directed to issue.

*John Burnett* and *John Kelsay*, for Appellant.

*R. S. McFadden*, for Respondent.

THAYER, J.—This case comes here from the judgment of the Circuit Court for the County of Benton, refusing to allow

a mandamus to issue to the respondent, as sheriff of said county, and commanding him to remit an excess of property alleged to have been wrongfully assessed to the appellant by the assessor of said county, for the year 1883.

It appears from the transcript that the appellant presented a petition to the said Circuit Court, duly verified, showing that he was a resident of said county, and owned both real and personal property therein liable to taxation, which was assessed for the year 1883 by the then assessor of that county, for the general purposes allowed by law ; and that said assessor, according to the statements in said petition, through mistake or otherwise, in making said assessment, returned as taxable property to the appellant a greater amount than should have been assessed to him ; that the tax upon said excess of property so assessed amounted to $393.47 ; that appellant had duly made an affidavit of such wrongful assessment, and had also made and presented to the said sheriff a list, duly verified, of property liable to taxation and amount of excess, and a copy of the assessment roll of his assessment for said year, in said county, and requested him to remit said excess ; which the respondent, as such sheriff, failed and refused to do.

The petition and other papers referred to were duly presented to said circuit court, and the application for the said writ of mandamus duly applied for thereon, which the said court refused to allow ; and from the judgment thereon this appeal was taken. Section 99 of Chapter 59, Misc. Laws of Oregon, reads as follows :

" Sec. 99. Whenever the assessor in any county, through mistake or otherwise, shall return as taxable property a greater amount than should be assessed to any person, the sheriff may remit the excess, upon the person owning such property, or his agent, making affidavit that the same was wrongfully assessed, and giving under oath a list of all his property liable to taxation; and the sheriff shall report the name of the person and the property so illegally assessed, and shall be credited by the county court with such excess."

The transcript includes a copy of the said affidavit of wrong-

ful assessment referred to in said petition, and it appears therefrom that the property so assessed was property the appellant denied he owned, and certain real property which he stated was situated in the County of Polk; and that according to the affidavit, no part of it could have been legally assessed to appellant by said assessor; and that the said assessment, so far as it included the amount of the property therein specified as having been wrongfully assessed, was a nullity. But it is claimed by the respondent's counsel that the appellant could not peremptorily require the respondent, as such sheriff, to remit it, for that would make the appellant sole judge and arbiter in the affair. He claimed that the sheriff, in such a case, has a discretion to exercise; that he must judge whether the excess should be remitted or not; and that the section of the statute above set out is merely permissive; otherwise a taxpayer, through fraud and perjury, could avoid the payment of taxes with impunity.

I am unable to concur in that view. In the first place, a sheriff, under our law, is not the kind of an officer that is clothed with judicial functions. And it is reasonable to suppose, that if it had been the intention of the legislature that the remission of the tax should depend upon his judgment, some mode would have been provided for ascertaining the facts upon which it was to be exercised. The language of the section, it is true, is permissive in form. It reads: "The sheriff may remit the excess"; but it certainly cannot be contended that it is to be left at his option, as that would lead to the most absurd consequences. There could be nothing more ridiculous, in my opinion, or unjust, than to vest in sheriffs arbitrary power of that character. It would be very easy for a sheriff, when some favorite presented an affidavit that the assessor had returned an amount of property that should not have been assessed to him, to remit it; but when some one who had opposed his election presented such a claim, to conclude that he was not entitled to a remission, and refuse it; and no responsibility whatever would attach for such unjust discrimination. The sheriff being a judge *pro hac vice*, could

not be made answerable for an injustice of that character. It may be claimed, however, that the sheriff, in such a case, before determining the matter, should make inquiry as to the truth or falsity of the affidavit presented. But the statute does not authorize him to do that; and no presumptions are allowed in favor of officers exercising special and limited jurisdiction of that character. They have just what authority the statute in express terms gives them, and no more. The section of the statute in question specifies the evidence upon which the sheriff is to act—the affidavit of a tax-payer, with a list, given under oath, of all his property liable to taxation. It cannot, therefore, be claimed that the sheriff would have the right to act upon his own knowledge, or of that of any other person, unless he is dignified by construction of the statute into something more than a court of inferior jurisdiction, which I hardly think will be attempted by any ordinary lawyer.

But again, what better mode could have been devised in order to ascertain whether the assessor had returned as taxable property a greater amount than should have been assessed to the appellant, than that pointed out in said section 99? Mr. G. B. Smith knew better than any other living person as to what property he owned. No witness within the limits of earth could be produced, who would have been so well informed upon that subject as himself. He may not have sworn to the truth, might possibly be suggested. So might be said of a whole army of witnesses; but that does not preclude oral proof in the most important human affairs which occur. Perjury is probably committed in courts of justice every day, and the means of detecting and punishing it are very scanty indeed. But would a party be as liable to commit perjury who is supposed to be responsible, has property subject to taxation, where he is compelled to expose himself to sure and certain detection, in case he should do so? The legislature that enacted the statute in question, it is to be presumed, well understood the importance of the character of proof given by the appellant in this case. The affidavit standing alone would be very unsatisfactory, but when the affiant is required, as a condition

of the remission of the tax wrongfully assessed, to give under oath a list of all his property liable to taxation, he is placed in a condition in which few persons with any claims to responsibility would dare swerve from the truth.    Our lists of property for the purposes of taxation are made upon far weaker testimony than that.    Sec. 18 of said chapter 57 Misc. Laws provides that "it shall be the duty of every assessor to swear every person subject to taxation, to give a true account of his or her knowledge and belief; and should any person or persons, when so required, refuse to testify as aforesaid, the assessor shall ascertain the taxable property of such person or persons, from the best information to be derived from other sources."    This provision is less effectual in eliciting the fact, for the reason that the taxpayer is able to elude taking the oath, though Sec. 28, same chapter, subjects him, in case of a refusal to furnish a list under oath, to a forfeiture of twenty dollars, and the former section (Sec. 18) clearly indicates that the other sources of information to ascertain the taxable property of the person are less satisfactory than the oath of a person to give a true account of his or her property.    So also does section 28.    Otherwise, we may infer that the legislature would not have fixed a penalty for not furnishing under oath a list of property liable to taxation.    The federal system of income taxation was carried out in a similar manner.    There is, therefore, no force whatever in the argument that Section 99 of the statute ought not to be construed as mandatory upon the sheriff to remit the wrongful tax, in consequence of any pernicious effect arising from such a construction.    (*Livingston* v. *Hollenbeck*, 4 Barb. 9.)    It is a wholesome provision of law, intended to prevent oppression and wrong, and is securely guarded against mischievous results ; more so, by far, than if the construction contended for by respondent's counsel were to be adopted.

As has been suggested, however, the word " may " is used in the section made applicable to the duty of the sheriff in the remission of the portion of the tax wrongfully assessed, instead of the word "shall," and ordinarily it would import that

the duty imposed was directory.   But when the public interest is concerned, or the rights of third persons are affected, the two words are construed to mean the same thing.   This rule is too well settled to require a citation of authorities to sustain it.   It is only necessary to consider whether it is applicable to the case under consideration, and I am of the opinion that it is.   The public interest is concerned just as much in preventing a wrong to a citizen, as in exacting from him the payment of a lawful obligation.   The highest duty of the public is to prevent injustice, and what could be a greater wrong than to extort from a member of the community, under the form of law, that which he did not owe—an illegal and void claim.   It would be incompatible with the principles of a free government, and consistent only with tyranny.   The appellant's interest, of course, is concerned in the respondent's discharge of the duty.   He was unlawfully required to pay nearly four hundred dollars, and he had a right to demand that the respondent, as a public officer, promptly observe a duty which the law imposed upon him by virtue of his office.   He had full right, under that law, to demand that the sheriff remit the excess of taxes wrongfully assessed against him, and which the former was attempting to compel a forced payment of.   The government that would refuse to shield him from so unjust an exaction, would not deserve any revenue whatever.

It has been made a question whether the writ of mandamus was the proper remedy.   That question usually arises where any extraordinary remedy is applied.   Theories have been frequently advanced in such cases, which, if maintained, would render that class of remedies wholly impracticable.   The writ of mandamus, as it it is termed in our code, may be issued to any inferior court, corporation, board, officer or person, to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station.   The gist of the remedy is, to compel the performance of a duty resulting from an office, trust or station, in order to prevent a failure of justice.   It will not issue where there is a plain, speedy, and adequate remedy in the ordinary course of law.   The code

so declares, but the same result would follow if there were no such provision. Nor will it be issued to control the judicial discretion of a court, board, officer, or person ; but will, when they refuse to act, set them in motion. Subject to these qualifications, the remedy by mandamus is as ample and complete as any remedy given by law; and, in my opinion, was a very appropriate remedy in this case. The respondent, as tax collector, was endeavoring, under a tax roll and warrant issued to him, to enforce the payment of taxes. Nearly four hundred dollars of the amount, according to the said affidavit and petition, had either been assessed upon property the appellant did not own, or upon property not within the jurisdiction of the assessor of Benton County. The appellant was powerless ; he must either submit to the illegal exaction, or allow his property to be sold to satisfy it. Said section of the statute herein set out made it the duty of the respondent, as sheriff, to remit the illegal tax, upon the appellant's doing certain acts which he fully complied with ; and it is idle, under the circumstances, to contend that the writ should not have issued to compel the performance of the duty. The judicial discretion of the sheriff in the matter, if he had any, could not have been controlled by the writ ; but what discretion could he have had in the premises ? He was required to perform a simple act, was empowered to do it, and was fully indemnified against any consequences arising therefrom. He had a right to require the appellant to comply with the condition of the statute referred to, and his refusal after the performance was a contumacy of the law he had sworn to support. Unless the officers of the law respect it, I do not know who could be expected to do so.

The judgment appealed from should be reversed, and the case remanded, with directions to issue the writ prayed for in appellant's said petition.

LORD, J.—I have been unable to find any statute or decided cases which throw much light upon the question involved. I concur in the result with some reluctance.

STRAHAN, J., did not sit in this case.