Decided 27 July, 1903.

## McFARLANE v. CORNELIUS.

[73 Pac. 325, 74 Pac. 468.]

43  513
43  488
43  535
43  513
45  363;

SERVICE BY PUBLICATION — POSSIBILITY OF SUBSTITUTED SERVICE.

1. After a divorce suit has been commenced, it must be inferred that neither of the parties is a "person of the family" of the other, within the meaning of B. & C. Comp. § 55, subd. 5, providing that if the defendant be not found the summons may be delivered "to some person of the family" over a stated age, where it appears that they had lived together until the day before the filing of the complaint, that plaintiff had the custody of the minor children by the marriage, and that defendant had left this state, for these statements show that the family relationship was at least suspended. Nor can the minor children who are in plaintiff's care be considered persons of the family of the other spouse under such circumstances.

DIFFERENCE BETWEEN DWELLING HOUSE AND PLACE OF RESIDENCE.

2. The terms "dwelling house" and "usual place of abode," used in B. &. C. Comp. § 55, subd. 5, providing for serving process on a member of defendant's family, are synonyms signifying domicile, and have a different meaning from "place of residence," found in section 57, line 8, directing whither the pleadings shall be sent by mail if defendant cannot be served within the state. The former terms refer to the place of permanent dwelling in this state, while the latter applies to defendant's residence, either permanent or temporary, in another state or country.

PUBLICATION — RESIDENCE TO WHICH PROCESS SHOULD BE MAILED.

3. An affidavit for the publication of a summons stating that "defendant is now and was during all the times hereinafter mentioned a resident and inhabitant of this state, and has departed therefrom" and is now at a stated place in a foreign country, inferentially shows that defendant has a fixed and permanent abode in Oregon, but is now temporarily residing elsewhere, and the point of such present sojourning is his "place of residence," within the meaning of that expression in B. & C. Comp. § 57, line 8.

PURPOSE OF PUBLISHING SUMMONS.

4. The object to be accomplished by a publication and mailing of a summons, as directed by Section 57, B. & C. Comp., is to notify the party of the pendency of the suit, and the summons and complaint should be mailed to him wherever he may happen to be at the time, rather than to his place of permanent abode.

SPECIFYING IN THE ORDER THE TIME OF APPEARANCE.

5. "The time prescribed in the order for publication," which must be specified in a published summons, under Section 57, B. & C. Comp., means the number of weeks considered by the judge making the order to be reasonable for publication, so that an order directing a summons to be printed for six consecutive weeks does prescribe "the time for publication," within the meaning of B. & C. Comp. § 57, line 16.

TIME ALLOWED TO MAKE PROOF OF PUBLICATION.

6. B. & C. Comp. § 822, declaring that proof of publication of a notice required to be published in a newspaper may be made by the affidavit of the printer, etc., but that such affidavit must be made within six months after the last day of publication, is directory only; and hence a failure of the printer to make affidavit within that time to the publication of a summons does not affect the jurisdiction of the court to render judgment thereon, if the affidavit is made and filed before the making of the final order.

43 Or.—33

Collateral Attack for Insufficiency of Complaint.

7. Where complaint in a suit for divorce alleged some facts warranting a decree in favor of plaintiff, such decree cannot be collaterally attacked on the ground that the complaint was insufficient for want of facts.

Appeal — Costs — Briefs — Stipulation.

8. The parties in an appeal stipulated that the briefs and abstract therein might be used on appeal in another action, in which the appellee in the first mentioned appeal was appellant. In the other appeal judgment was reversed, entitling appellant therein to costs; and in the appeal for which the brief and abstract were originally prepared there was also a reversal, making the same party liable for costs on that appeal. *Held*, that the stipulation did not operate to make half the costs of printing chargeable to each appeal, but that the successful party in the first appeal was entitled to the full costs of printing.

From Marion : George H. Burnett, Judge.

This action was begun October 11, 1902, by A. McFarlane against G. B. Cornelius in the circuit court for Marion County to recover the possession of the west 36 feet of lots 1, 2, 3, and 4, and all of lot 8, in block 8, in the Town of Turner, and also lots 2 and 7, in block 5, of the Town of Mehama, Oregon. The complaint alleges that plaintiff is the owner in fee thereof, and that the defendant is, and for more than 30 days prior to the commencement of the action has been in the wrongful possession of said premises, and unlawfully withholds the same from him, to his damage in the sum of $200. The answer denies the allegations of the complaint, and for a separate defense avers that the defendant is, and ever since September 12, 1902, has been, the owner in fee of an undivided one third of said lots, and is in and entitled to the actual possession of the whole thereof. The allegation of defendant's ownership of an interest in or right to the possession of said premises having been denied in the reply, a trial was had, resulting in a judgment for plaintiff, wherein it was adjudged that he was the owner and entitled to the immediate possession of said lots, and that he recover the sum of $100 for the wrongful detention thereof; from which the defendant appeals.

Reversed.

For appellant there was a brief over the names of *Bonham & Martin, Alva O. Condit, Woodson T. Slater,* and

*William M. Kaiser*, with an oral argument by *Mr. B. F. Bonham* and *Mr. Kaiser*.

For respondent there was a brief and an oral argument by *Mr. Peter H. D'Arcy* and *Mr. Geo. G. Bingham*.

Mr. Chief Justice Moore, after stating the facts as above, delivered the opinion of the court.

At the trial the plaintiff introduced in evidence his chain of title to the premises, and also gave testimony tending to prove the allegations of the complaint, and rested, whereupon, the defendant, to support the averments of the answer, offered in evidence a judgment roll from Department No. 2 of said court, in the divorce suit of Elizabeth McFarlane, as plaintiff, against the plaintiff herein, as defendant, purporting to decree to her an undivided one third of said lots, and also offered in evidence a deed executed by her September 12, 1902, designed to convey said interest to him. An objection to the introduction of said roll, on the ground that the court granting the decree had no jurisdiction of the person of the defendant therein, because the affidavit for the service of the summons by publication was insufficient to support the order therefor, and that the proof of such service was not made within the time prescribed by law, having been sustained, an exception was allowed, and it is contended by defendant's counsel that an error was committed in this respect. The affidavit referred to, omitting the formal parts and copy of the complaint, is as follows:

" I, Elizabeth McFarlane, being first duly sworn, say that I am the plaintiff in the above-entitled cause and court; and that the above-named defendant is now, and was during all the times hereinafter mentioned, a resident and inhabitant of this state, and of Marion County therein ; and that he has departed from said State of Oregon, and has remained absent from said state for six consecutive weeks last past, and still so remains absent therefrom ; that said

defendant, after due diligence, cannot be found within said state.

That said plaintiff, on the 24th day of February, 1899, duly filed her verified complaint herein, and upon said date placed in the hands of the Sheriff of Marion County, Oregon, a summons in said cause and court, together with a copy of said complaint duly certified to, as by law required, by Webster Holmes, one of plaintiff's attorneys herein ; and that said sheriff made diligent search for said defendant in his county, and that said defendant could not be found therein ; and that said sheriff, in substance, made his return to that effect.

That a cause of suit exists in favor of said plaintiff and against said defendant, as appears by her complaint on file herein, a copy of said complaint of which the following is a true copy in words, letters and figures, to wit : [Here follows a copy of the complaint, filed February 24, 1899, in which it is alleged that the plaintiff and defendant therein intermarried, January 11, 1874, that since that time they had lived and cohabited together as husband and wife until about February 23, 1899, and that they were then actual residents and inhabitants of said county.]

That said plaintiff has made diligent search and inquiry to ascertain the whereabouts of said plaintiff, and that she cannot find him or locate him in said state, and has been informed, and believes, and therefore states it to be a fact, that said defendant has departed from said state and taken passage for Ontario, Canada; and that he departed from the state, as aforesaid, on the 25th day of February, 1899 ; and that said plaintiff, at this time, believes he is temporarily located at the City of Hamilton, Ontario, Canada; and that said Hamilton, Ontario, Canada, is his last known postoffice address; and that personal service of summons could not have been made during any of the times mentioned herein upon said defendant in this state; and that personal service at this time cannot be made or had upon him in this state.

That *The Salem Sentinel* is a weekly newspaper, published in the City of Salem, Marion County, Oregon, and is of general circulation therein.

Wherefore this affiant prays this honorable court, or

the judge thereof, to grant an order herein, directing the publication of summons in said cause to be made in a newspaper, to wit: *The Salem Sentinel*, published in the County of Marion and State of Oregon, and that the service be made upon said defendant by publication in the manner in such cases made and provided by law."

Based upon this affidavit, the judge of Department No. 2 of said court, on April 13, 1899, made the following order:

" That the service of summons shall be made upon said defendant by the publication thereof in a weekly newspaper, to wit: *The Salem Sentinel*, published in Salem, Marion County, Oregon, for six consecutive weeks, requiring said defendant to appear and answer said complaint herein on or before the last day of the time prescribed herein for the publication of said summons; and that a copy of said complaint, together with a copy of the summons, be forthwith deposited in the postoffice at Salem, Marion County, Oregon, addressed and directed to said defendant at Hamilton, Ontario, Canada, his last known address, with the postage fully prepaid thereon."

The summons issued in pursuance thereof was, so far as material, as follows:

" To A. McFarlane, the above-named defendant:
In the name of the State of Oregon, you are hereby required to appear and answer the complaint filed against you in the above-entitled court and suit on or before the last day of the time prescribed in the order for publication made herein, to wit: the twenty-seventh day of May, 1899, and if you fail to so answer, for want thereof, the plaintiff will apply to the court for the relief prayed for in her complaint on file herein, to wit: That the bonds of matrimony now existing between said plaintiff and said defendant be dissolved ; that the said plaintiff have the care and custody of the said minor children, to wit: William A. McFarlane, Robert McFarlane, Edna McFarlane and Albert McFarlane. * * And for an undivided estate in fee to a one third of the real property, described in said complaint as follows: [Here the real estate is described as hereinbefore alleged, and the following sums are demanded: Attorney's

fees, $200; permanent alimony, $1,000; care of said children during their minority, $50 a month; the process concluding with the following paragraph:]

This summons is served upon you by order of the Honorable R. P. Boise, Judge of the above-entitled Court for Department Number Two thereof, dated the 13th day of April, 1899, and the date of the first publication being the 15th day of April, 1899, and the date of the last publication will expire on the twenty-seventh day of May, 1899."

The certificate of the sheriff, attached to a copy of the summons, is to the effect that on April 15, 1899, he served the same upon the defendant therein, by inclosing in a sealed envelope plainly addressed to "A. McFarlane, Hamilton, Ontorio, Canada," with the postage fully prepaid thereon, a copy of said summons, certified to by him in his official capacity, together with a copy of the complaint, certified to by one of the attorneys for the plaintiff therein, and deposited said envelope in the postoffice at Salem, Oregon, and that between said places a direct communication by mail exists. The printer of the *Salem Sentinel*, on March 1, 1901, made an affidavit to the effect that said summons was published once a week for seven consecutive weeks in said newspaper in the issues dated April 15, 22, 29, and May 6, 13, 20, and 27, 1899. The defendant not having appeared in person or by counsel, the said court, on March 24, 1902, upon such proof of service of the summons, tried the cause, and from the testimony taken found the facts in substance as alleged in the complaint therein, and decreed that said marriage be dissolved, that Mrs. McFarlane was the owner in fee of an undivided one third of said lots, and awarded to her the custody of said minor children, and her costs and disbursements.

1. The statute prescribing the manner of obtaining jurisdiction of the person of a defendant in a civil action or suit, so far as involved herein, is as follows: "The summons shall be served by delivering a copy thereof, together with

a copy of the complaint, prepared and certified by the plaintiff, his agent or attorney, or by the county clerk, as follows: * * (5) * * To the defendant personally, or if he be not found, to some person of the family, above the age of fourteen years, at the dwelling house or usual place of abode of the defendant": B. & C. Comp. §§ 55, subd. 5, 396, 400, subd. 2. To uphold his judgment in this cause, plaintiff's counsel, invoking the rule adopted in this state, that, before a substituted service of summons can be relied upon as a means of securing jurisdiction of the person, it must appear from the return of the officer that after exercising due diligence he could not find the defendant (*Trullenger* v. *Todd*, 5 Or. 36; *Hass* v. *Sedlak*, 9 Or. 462), contend, by a parity.of reasoning, that, before constructive service of a summons can be relied upon to authorize the entry of a decree by default against the property of a defendant which has been brought under the jurisdiction of the court, the affidavit for the service thereof by publication should show that a substituted service could not be made upon such party; and, it appearing from an inspection of the affidavit for an order of publication in the divorce case that the defendant was an actual resident of Marion County, Oregon, though temporarily absent therefrom, he might have been served by delivering a copy of the summons and complaint to some person of the family, above the age of fourteen years, at his dwelling house, or usual place of abode; and, such fact not having been negatived by the affidavit, it did not state facts sufficient to authorize a service of summons by publication, and hence no error was committed by the court in the present action as alleged. Assuming, without deciding, that the rule insisted upon is applicable in a collateral attack, though it was held in *Pennoyer* v. *Neff*, 95 U. S. 714, in construing the statute of this state, that defects in the affidavit for an order for the service of a summons by publication could only be taken advantage of on

appeal, and could not be urged to impeach the judgment collaterally, which rule has been followed in this state (*George* v. *Nowlan*, 38 Or. 537, 64 Pac. 1), the fact that plaintiff and defendant in the divorce proceedings had been living together as husband and wife until the day before the suit was commenced, as alleged in the complaint, which is made a part of said affidavit, implies that, though prior thereto said parties may have had a joint residence in Marion County, such inhabitancy had been severed, and, the plaintiff therein having also alleged that she had the custody of the minor children, further implies that they were not occupying their father's residence, nor were they members of his family. If substituted service could have been made upon the defendant by delivering a copy of the summons and complaint to one of his children, because such child was a "person of the family," it would seem necessarily to follow that the service might with equal propriety have been made upon his wife, the plaintiff therein ; for, if her children continue to be persons of the family after their father left the state and the divorce suit was instituted, she must sustain the same relation toward him while residing in his dwelling house or usual place of abode. Collusion will not be presumed (B. & C. Comp. § 788, subd. 1), and, when a suit for a divorce has been commenced, it must be inferred that the marital relations have been interrupted, and, the defendant being temporarily absent, the plaintiff and the children, occupying the dwelling house or usual place of abode of the defendant, are not persons of the family within the meaning of the term as used in the statute under consideration ; for by the institution of the divorce proceeding the family relations were suspended, in which case the husband and wife may have different domiciles under the law regulating divorces, and particularly so when the husband forfeits his rights by

misbehavior and by desertion of the wife: *Harding* v. *Alden*, 9 Greenl. (Me.) 140 (23 Am Dec. 549).

2. If personal or substituted service of a summons cannot be made, and the defendant, after due diligence, cannot be found within the state, and when that fact appears by affidavit to the satisfaction of the court or judge thereof, and it also appears that a cause of action exists against the defendant, the court or judge shall grant an order that the service be made by publication of a summons, when the defendant, being a resident of this state, has departed therefrom and remained absent six consecutive weeks: B. & C. Comp. § 56, subd. 2. In the order for service by publication, the court or judge shall direct a copy of the summons and complaint to be forthwith deposited in the postoffice, directed to the defendant at his place of residence: B. & C. Comp. § 57. It will be remembered that the order providing for the service by publication directed that a copy of the complaint and summons be forthwith deposited in the postoffice at Salem, Oregon, directed to the defendant at Hamilton, Ontario, Canada, his last known address, and the certificate of the sheriff is to the effect that he complied with the terms of said order. It is argued by plaintiff's counsel that the affidavit for the service of the summons by publication having disclosed that the residence of the defendant was in Marion County, Oregon, the order directing that a copy of the complaint and summons should be sent to the defendant at Hamilton, Ontario, Canada, was a nullity and any decree rendered in pursuance of such service is void, and hence no error was committed in refusing to receive the judgment roll in evidence. An examination of Section 55, B. & C. Comp., will show that it is the substituted service upon some person of the family above the age of fourteen years, at the dwelling house or usual place of abode of the defendant, that renders him amenable to the process, copies of which have

been delivered to such person for him. The "dwelling house" or "usual place of abode," as used in the statute under consideration, are synonymous terms, and evidently mean a domicile. The defendant's "place of residence," as specified in Section 57, B. & C. Comp., is not stated to be temporary or permanent, so that either of these qualifying words may apply with equal propriety to such place. A distinction is clearly made by these statutes between the defendant's domicile in this state and his residence, either temporary or permanent, in another state or country. In *Walker's Estate* v. *Walker,* 1 Mo. App. 404, the court, in distinguishing these terms, say: "There is a difference between a residence and a domicile, which, however, may not be capable of easy definition ; that is to say, it may be difficult to define both terms in such manner as to escape criticism. But every one can see at least this distinction : A person domiciled here may, for the sake of his health, reside one or more years in some place the climate of which is supposed to be more favorable to his constitution."

3. The words "resident" and "inhabitant" not being synonymous, the latter implying a more fixed and permanent abode than the former (*Board of Supervisors* v. *Davenport,* 40 Ill. 197), it must be inferred from the affidavit for the service of the summons by publication, which states that the defendant at the time it was filed was a "resident and inhabitant of this state," that he had a fixed abode therein, and was a permanent resident thereof, but that he was temporarily residing at Hamilton, Ontario, Canada. As a person may simultaneously have a permanent and a temporary residence, and the statute not having indicated to which of these places a copy of the complaint and summons should be directed, they were, in our opinion, properly mailed to the defendant's temporary residence. A permanent residence within this state continues to be such

as long as a resident, when absent therefrom, intends to return thereto, but his temporary residence in another state or country only remains as such while he is an actual resident thereof, so that process mailed to the place of his temporary residence, if known, would in most instances reach him, but, if directed to his permanent residence, there might be grave doubts about his ever receiving it.

4. The purpose to be subserved by the enactment of Section 57, B. & C. Comp., undoubtedly was to inform a party defendant without the state of the pendency of a suit or action in which his property might be affected by a judgment or decree to be rendered therein. Such notice, to be effectual, must be brought home to the defendant, if possible, and this is generally best accomplished by mailing copies of the summons and complaint to him at his place of residence in the state or country where he happens to be, rather than the place in which is situated his dwelling house or usual place of abode in this state. We think, in the present instance, that the order of the court was correct in this respect, for the affidavit having stated that the defendant was "temporarily located at the City of Hamilton, Ontario, Canada," and as the word "locate" is defined in Webster's International Dictionary as "to take up one's residence," the judge, in making the order, adopted that meaning, and very properly concluded that the defendant was temporarily residing at Hamilton, Ontario, and that a copy of the complaint and summons should be directed to him at that city: *Collinson* v. *Teal*, 4 Sawy. 241 (Fed. Cas. No. 3,020).

5. It is maintained by plaintiff's counsel that the order made by the judge, April 13, 1899, based upon Mrs. McFarlane's affidavit, did not specify the time within which the defendant in the divorce suit was required to appear and answer the complaint therein, and, this being so, it was insufficient to justify the service of the summons by

publication, and that any decree based upon such service is void, and hence no error was committed in refusing to receive said judgment roll in evidence. The statute provides that "the defendant shall appear and answer on or before the last day of the time prescribed in the order for publication, and if he does not, judgment may be taken against him for want thereof. The summons shall always specify the time prescribed in the order for publication, and, if published, the date of the first publication. The time prescribed in the order shall begin to run from the day of first publication, * * and the service of such summons shall be deemed complete at the expiration of the time prescribed for publication as aforesaid": B. & C. Comp. § 57. It will be remembered that the order in question provided that the summons should be published for six consecutive weeks, "requiring said defendant to appear and answer said complaint herein on or before the last day of the time prescribed herein for the publication of said summons." The statute also provides, in effect, that the order shall direct the publication of the summons to be made for such a length of time as may be deemed reasonable, not less than once a week for six weeks, and that the time so prescribed shall begin to run from the day of the first publication, which must be stated in the summons, if published : B. & C. Comp. § 57. The order in question limited the time for the publication of the summons to six consecutive weeks, and as such time began to run from the date of the first publication of the process, which was stated in the summons, the only time necessary to be prescribed in the order was the period which the judge deemed reasonable, and, this having been stated, was, in our opinion, a sufficient compliance with the requirements of the statute.

6. The statute regulating the manner of evidencing the means adopted to secure jurisdiction of the person of a

defendant is, so far as material, as follows: "Proof of the
service of the summons, or of the deposit thereof in the
postoffice, shall be as follows: (1) If the service or deposit
in the postoffice be by the sheriff or his deputy, or by a
constable or marshal, the certificate of such officer; * *
(3) In case of publication, the affidavit of the printer or
his foreman, or his principal clerk, showing the same:"
B. & C. Comp. § 62. The statute also contains the follow-
ing provision: "Proof of the publication of a document
or notice required by law, or by an order of a court or a
judge, to be published in a newspaper, may be made by the
affidavit of the printer of the newspaper, or his foreman or
principal clerk, annexed to a copy of the document or no-
tice, specifying the times when and the paper in which the
publication was made; but such affidavit must be made
within six months after the last day of publication": B. & C.
Comp. § 822. The affidavit of the printer of the news-
paper in which the summons in the divorce case was pub-
lished shows that the last issue containing the process was
that of May 27, 1899, but the jurat discloses that the affi-
davit was not made until March 1, 1901. If the section
last quoted is mandatory, as the lower court evidently de-
termined, the decree in the divorce suit is void, and there-
fore vulnerable to a collateral attack; but if the statutory
provision adverted to is directory only, an error was com-
mitted in refusing to receive the judgment roll in evidence.
"The consequential distinction between directory and
mandatory statutes," says Judge Sutherland, in his work
on Statutory Construction (section 446), "is that the vio-
lation of the former is attended with no consequences,
while a failure to comply with the requirements of the
other is productive of serious results." An examination
of the statute (B. & C. Comp. § 822) will show that it does
not prescribe any penalty for a failure to make the affidavit
within the time limited therefor. The plaintiff's counsel,

contending that the requirement that proof of the publication of the summons should have been made within the time prescribed is mandatory, cite the case of *Wendel* v. *Durbin*, 26 Wis. 390, in which it was held that statutes imposing a duty, and giving the means of performing it, are to be regarded as mandatory. In that case a statute of Wisconsin, prescribing the manner of serving a summons, provided that "the officer or person making such service shall indorse on such copy, over his signature, the date of such service, and that the same is a true copy of the original"; and, the defendant having been served with a copy of a summons that did not contain such indorsement, judgment was rendered against him by default, which he moved to set aside on the ground that no summons had ever been served in the manner required by law. The motion having been denied, the defendant appealed, and Mr. Chief Justice Dɪxoɴ, speaking for the court, in reversing the judgment, says: "The statute in question imposes a duty upon the officer or person serving the process, which is beneficial, or may be beneficial, to the party served. Without such indorsement the ignorant or illiterate may not know, or may not remember, the date of service; and so the time for answering may expire, and the opportunity for defense be lost, with little or no fault on their part. It was for the protection of such the statute was enacted." In that case, the defendant having moved in the original action to set aside the judgment, the attack thereon was direct, and the conclusion reached was undoubtedly correct, for, as is said by a text-writer: "When the statute prescribes the form of service or mode of obtaining it, that mode must be pursued strictly": Brown, Juris. § 41.

In *Choate* v. *Spencer*, 13 Mont. 127 (32 Pac. 651, 20 L. R. A. 424, 40 Am. St. Rep. 425), the Supreme Court of Montana, evidently in a collateral proceeding, though said

to have been a direct attack, having held that a judgment, based upon the personal service of a summons that had impressed thereon the seal of the probate instead of that of the district court, was void, and that a deed executed in pursuance of a sale under execution issued upon such judgment would be canceled in equity as a cloud upon the plaintiff's title, the conclusion thus reached is severely criticised in the notes to that case, the editor saying: "Such decisions subject judicial tribunals and their administration of justice to just opprobrium, and even a professional man, familiar with the technicalities of the law, cannot but sympathize with the feelings of contempt generated in the mind of a layman when he sees courts overlooking the substance and equity of proceedings, and determining the rights of parties upon such formal and puerile considerations as an error of a clerical officer in picking up the wrong seal and impressing it upon the process of the court." To the same effect, see *Sanford* v. *Edwards*, 19 Mont. 56 (47 Pac. 212, 61 Am. St. Rep. 482), a decision by the same court, reaffirming the doctrine announced in the preceding case, which is also adversely commented upon in the exhaustive notes thereto. The statute requiring that proof of service shall be made within six months after the last day of publication does not relate to the form of service, but to the mode of evidencing it, and, this being so, we believe the requirement is not mandatory, but only directory. To reach a different conclusion might result in placing it within the power of the printer of a newspaper, if he so desired, to defeat the jurisdiction of a court, for by refusing to make the necessary affidavit, and appealing from the judgment requiring him to do so, the time limited for the performance of the duty might possibly expire before the cause could be heard on appeal. The frustration of the power to hear and determine causes, which might possibly result from pursuing

the course assumed, leads us to conclude that if the statute under consideration, which is general in its scope, is applicable to the publication of a summons, it is directory only, and, as the affidavit was made before the decree was rendered, the proof was sufficient ( *Osgood* v. *Osgood*, 35 Or. 1, 56 Pac. 1017); for, as was said by Mr. Chief Justice Eustis, in *Wilson* v. *State Bank of Alabama*, 3 La. Ann. 196, "when a statute directs a thing to be done at a certain time, it does not necessarily follow that it may not be done afterwards."

7. It is also contended by plaintiff's counsel that the complaint in the divorce suit did not state facts sufficient to authorize a decree dissolving the marriage contract, and for this reason no error was committed in rejecting the judgment roll therein. In the trial of that suit the court necessarily determined that the complaint was sufficient, and, there having been some facts alleged upon which this conclusion was based, the decree is not void, and hence not vulnerable to collateral attack : *Woodward* v. *Baker*, 10 Or. 491 ; *Berry* v. *King*, 15 Or. 165 (13 Pac. 772); *Morrill* v. *Morrill*, 20 Or. 96 (25 Pac. 362, 11 L. R. A. 155, 23 Am. St. Rep. 95); *Crabill* v. *Crabill*, 22 Or. 588 (30 Pac. 320); *Bank of Colfax* v. *Richardson*, 34 Or. 518 (54 Pac. 359, 75 Am. St. Rep. 664); *Altman* v. *School District*, 35 Or. 85 (56 Pac. 291, 76 Am. St. Rep. 468 ); *McNary* v. *Bush*, 35 Or. 114 (56 Pac. 646); *George* v. *Nowlan*, 38 Or. 537 (64 Pac. 1).

Other reasons are assigned in support of the action of the trial court, but deeming them immaterial, and believing an error was committed in refusing to receive the judgment roll in the divorce suit as evidence in this action, the judgment is reversed and a new trial ordered.

Reversed.

### Oɴ Oʙᴊᴇᴄᴛɪᴏɴs ᴛᴏ Cᴏsᴛs.

*Mr. Peter H. D'Arcy* for the motion.

*Mr. William M. Kaiser* and *Mr. Carey F. Martin, contra.*

Mr. Cʜɪᴇꜰ Jᴜsᴛɪᴄᴇ Mᴏᴏʀᴇ delivered the opinion.

8. This is a motion to tax costs and disbursements. A judgment for the plaintiff having been reversed in this court, the defendant filed a cost bill, containing, *inter alia*, the following items : To printing an abstract, $39 ; a brief, $13, and a reply brief, $6.50. The plaintiff objected thereto, on the ground that the parties had entered into a stipulation whereby he was liable for the payment of only one half of these sums.   The stipulation relied upon provides that the abstract and briefs filed in this action might be used as such in the suit of Elizabeth McFarlane against the plaintiff herein, but no express agreement was made regarding the costs or disbursements in either case.   In that suit (*McFarlane* v. *McFarlane*, 43 Or. 477, 73 Pac. 203), a supplemental decree was rendered for the plaintiff, which was reversed upon appeal, thereby entitling this plaintiff, the defendant therein, to his costs and disbursements. This cause of action arose out of the original decree in the suit, and the stipulation entered into was intended to avoid the expense of printing in the other case.   The abstract and briefs printed and used at the trial of this action on appeal were also used at the trial of that suit, but no additional expense in the latter case was incurred on account thereof.   The parties not having agreed concerning the costs and disbursements in either case, and Elizabeth McFarlane not being a party hereto, the expense of printing is properly chargeable in this action only, and the defendant should be allowed the sums claimed therefor, and it is so ordered.      Oʙᴊᴇᴄᴛɪᴏɴs Oᴠᴇʀʀᴜʟᴇᴅ.