On Demurrer to Alternative Writ, argued October 8, decided October 14, 1913.

On Amended Alternative Writ, submitted October 15, decided October 21, 1913.

## CITY OF PORTLAND *v.* ALBEE, MAYOR.

(135 Pac. 516: 135 Pac. 897.)

**Municipal Corporations — Indebtedness — Limitation — Charter Provisions.**

1. Portland Charter (Spec. Laws 1903, p. 3), Section 88, provides that no indebtedness shall be incurred for the acquisition of any public utility which, together with the existing bonded indebtedness of the city, shall exceed 7 per centum of the assessed value of the real and personal property in the city. An amendment to the charter adopted in 1910 created a department of public docks, consisting of a commission which was empowered to issue and dispose of dock bonds to a specified amount. An amendment adopted in May, 1913, provided that the council might issue and sell all bonds theretofore authorized and not sold under certain provisions of the charter, provided that the bonded indebtedness of the city should at no time exceed the amount authorized by Section 88 of the charter of 1903. *Held,* that dock bonds not issued prior to the adoption of the amendment of 1913 could not be issued if the indebtedness of the city would thereby be augmented beyond the limit fixed by Section 88, and hence a bidder for such bonds could not compel their issuance by *mandamus* without showing that the issuance of the bonds would not increase the debt beyond such limit.

**Municipal Corporations—Bonds—Validity.**

2. Municipal bonds, valid when executed, cannot be rendered void by an amendment to the charter, and so a declaration in a new

charter that bonds issued under previous authorizations are valid obligations of the city is unnecessary.

### Municipal Corporations—Bonds—Charter—Construction.

3. Portland Charter of 1913, Section 92, provides that no bonds other than those for public improvements, payable out of special assessments, shall be issued, unless approved by a vote of the people, but that this provision shall not apply to bonds heretofore authorized, while Section 93 declares that the council may issue and sell all additional bonds heretofore authorized and not sold under the provisions of the charter of 1903 as amended, and that dock bonds authorized under the amendment of November, 1910, to the amount of $2,500,000, are valid obligations. *Held*, that the city council could, without submitting the matter to popular vote, sell unsold dock bonds to the amount authorized.

### Mandamus—Subjects of Mandamus—Ministerial Act.

4. Where the charter of the city of Portland imposed upon the mayor and auditor the ministerial duty of executing bonds authorized by the city council, *mandamus* will issue to compel the execution of such bonds, the execution being a mere ministerial duty not involving discretion.

### Municipal Corporations—Bonds—Issuance—Power of Commission.

5. Portland Charter of 1913, Section 1, provides that all powers and duties under the charter of 1913 of the executive board, the water board, and other boards and commissions abolished by the charter, shall be vested in the council. Section 93 declares that no board or commission existing under the charter of 1903, except the civil service commission, should exist more than six months after the charter took effect, until which time such boards or commissions should be subject to full regulation or abolition by the council which should have power to issue and sell all additional bonds theretofore authorized and not sold under Section 118 of the charter of 1903. The charter of 1903, Section 118, as amended in 1910, provided for the creation of a dock commission, and authorized it to issue bonds to the amount of $2,500,000 for the improvement of the city harbor. After the adoption of the charter of 1913, Section 93 was amended merely so as to except the department of public docks from the general abolition of boards, though the ballot title of the amendment recited that it was an act to amend Section 93, as amended, of the charter, providing that the department of public docks shall not be abolished, but shall be retained with authority to exercise all the power originally conferred upon it. *Held*, that the amendment merely preserved the department of public docks from extinction, the provisions in the ballot title attempting to readopt the provisions of the charter of 1903, Section 118, not giving the dock commission authority to issue additional bonds, as that right was specifically granted by Section 1 of the charter of 1913 to the city council.

### Municipal Corporations—Bonds—Sales—Persons Entitled to Purchase —"May."

6. Under Portland charter of 1913, Section 113, providing that whenever bonds of the City of Portland are offered for sale, and there is a balance to the credit of any sinking fund or special fund not

invested, said bonds may be awarded at par and accrued interest to the city treasurer as an investment for such bonds, the common council may in its discretion award the bonds to a private purchaser whose bid is the same, the word "may" not being equivalent to "must," but conferring upon the council the discretionary power of awarding the bonds, the two bids being the same.

Original proceeding in Supreme Court.

En Banc.   This is an original *mandamus* proceeding by the city of Portland, a municipal corporation, and Henry Teal, against H. R. Albee, mayor of the city of Portland, and A. L. Barbur, auditor of the city of Portland, in which the defendants filed a demurrer to the alternative writ.   The demurrer was sustained and the proceeding quashed.                    QUASHED.

For the defendants there was a brief and an oral argument by *Mr. F. W. Mulkey.*

For the plaintiffs there was a brief over the names of *Mr. Walter P. La Roche, Mr. H. M. Tomlinson,* and *Mr. Henry A. Davie,* with oral arguments by *Mr. La Roche* and *Mr. Tomlinson.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. This is a special proceeding, instituted in this court, to compel the defendants, H. R. Albee, as mayor of the city of Portland, and A. L. Barbur, as auditor thereof, forthwith to execute to the plaintiff Henry Teal a bond of that municipality for which he had bid the par value and accrued interest, pursuant to a notice of the sale thereof, but which bond the defendants refused to execute, asserting that they were without authority to sign and deliver the obligation. An alternative writ of *mandamus* was issued and served upon the defendants who demurred thereto on the

ground that it did not state facts sufficient to constitute a cause of action.

It is unnecessary to set forth the facts in detail as averred in the writ, for such allegations are deemed sufficient, except in one particular to be hereinafter noted. The material facts as they appear from the writ are that on November 8, 1910, at a special city election held in Portland, Section 118 of the charter then in force (Spec. Laws Or. 1903, p. 3) was amended by creating a "department of public docks," consisting of a commission composed of five members to be appointed by the mayor. The commission was empowered to issue and dispose of "dock bonds of the city of Portland" to an amount not exceeding $2,500,000. The commissioners, having been duly appointed, issued and sold some of these bonds, and expended the money thus obtained in making public improvements prior to May 3, 1913, when at a special election held in the city of Portland the legal voters thereof enacted a general amendment of the charter, providing for a commission form of government. The following excerpts are taken from the fundamental law of the municipality as thus amended:

"No bonds other than bonds for public improvements payable out of assessments upon the property benefited, and sewer bonds if otherwise authorized, shall be issued unless approved by vote of the people at a general or special election at which the question shall be submitted in the same manner as other measures are submitted under the initiative or referendum. This provision shall not apply to bonds heretofore authorized": Section 92.

"The council of the city of Portland is hereby authorized to issue and sell all additional bonds heretofore authorized and not sold under the provisions of sections 118, 118½, 227, 425¾ and 429 authorizing the issuance and sale of municipal garbage collection

bonds, of the charter of 1903, as amended; provided that the bonded indebtedness of the city of Portland shall at no time exceed the amount authorized under the provisions of section 88 of the charter of 1903 and provided further, that the bonds issued and sold under the provisions of section 383a of the charter of 1903, as amended, shall not be considered as a part of the debt limit fixed by said section 88'': Section 93.

The section of the charter limiting the indebtedness, and to which reference has been made, reads:

''No indebtedness shall be incurred for the acquisition of any public utility under the provisions of this charter, which, together with the existing bonded indebtedness of the city, shall exceed at any one time seven per centum of the assessed value of all real and personal property in the city, but in estimating such bonded indebtedness, all bonds given for the acquisition or construction of public properties and utilities, the interest on which bonds is paid out of the earnings of said public utilities or properties, shall be excluded: Provided, that whenever and for so long as such utility or undertaking fails to produce a sufficient revenue to pay all costs of operation and administration (including interest on the city bonds issued therefor and the cost of insurance against loss by fire, accidents, and injuries to persons), and an annual amount sufficient to pay at or before maturity all bonds issued on account of said undertaking; all such bonds outstanding shall be included in determining the city's power to incur indebtedness, unless the principal and interest thereof be payable exclusively from the receipts of such undertaking. The auditor shall annually report to the council, in detail, the amount of revenue from each such undertaking, and whether there is any, and if so, what, deficit in meeting the requirements above set forth'': Section 88; Spec. Laws Or. 1903, p. 41.

The power conferred upon the council by section 93 of the amended charter, ''to issue and sell all addi-

tional bonds heretofore authorized and not sold under the provisions of section 118," etc., applies *inter alia,* as we understand from the alternative writ of *mandamus,* to the "dock bonds of the city of Portland" that were approved by a vote of the people at a special election held in that city November 8, 1910, a part of which municipal certificates of indebtedness for the repayment of money loaned had not been issued or sold May 3, 1913, when the amended charter was enacted. The power thus granted to dispose of additional bonds "heretofore authorized and not sold" is encumbered with the following condition: "Provided that the bonded indebtedness of the city of Portland shall at no time exceed the amount authorized under the provisions of section 88 of the charter of 1903."

Construing *in pari materia* the clauses to which attention has been called, in order to give effect to each provision noted, it is believed that the legal voters of the city of Portland, in amending the charter, May 3, 1913, expressly limited the power to issue and sell additional bonds of the class specified, for any part of an authorization remaining, so that the municipal indebtedness should not exceed a stated *pro rata* of the material progress of the city as evidenced by the assessed value of all taxable property therein, subject, however, to certain qualifications specified in section 88 of the charter of 1903. It necessarily follows that the additional "dock bonds of the city of Portland," heretofore authorized and not sold under the provisions of section 118 of the charter of 1903 as amended, cannot be disposed of except upon an affirmative showing that in executing such obligations the indebtedness of the city would not be augmented beyond the limit thus fixed.

The alternative writ does not state that by executing the bond to the plaintiff Teal the debt of the city

will not be increased beyond the limit prescribed, and, this being so, the facts stated are not sufficient to constitute a cause of action. The demurrer to the writ should be sustained, and the proceeding quashed; and it is so ordered.                DEMURRER SUSTAINED.

---

Submitted October 15, decided October 21, 1913.

## ON AMENDED ALTERNATIVE WRIT.

### (135 Pac. 897.)

MR. JUSTICE MOORE delivered the opinion of the court.

The former proceedings in this cause having been dismissed, an amended alternative writ of *mandamus* was issued, wherein it is averred that the execution of the dock bonds of the city of Portland to the plaintiff Teal would not increase the municipal indebtedness beyond the limit prescribed by Section 88 of the charter of 1903. This allegation is supplemented by the affidavit of A. W. West, city auditor, containing a statement of the outstanding liabilities to be considered in determining the municipal indebtedness October 14, 1913, when the amended writ was issued, and the assessed value of the real and personal property in the city for the year 1913, which sworn declaration is made a part of the writ, and affirmatively establishes such averment. The defendants demurred to the amended writ on the ground that it did not state facts sufficient to constitute a cause of action.

It is contended by defendant's counsel that it affirmatively appears from the writ that the dock bonds directed to be executed to the plaintiff Henry Teal were not authorized by the council of the city of Portland, or by the commission of public docks thereof, for

issue and sale prior to July 1, 1913, when the amended charter went into effect; that no dock bonds have been approved by a vote of the people since the amended organic act became operative, and that the city of Portland is powerless, without such subsequent authorization, to issue or dispose of any dock bonds, under the amendment of section 118 of the charter of 1903 as enacted at a city election held November 8, 1910.

In order to determine the question thus presented an examination of some of the provisions of the charter, which went into effect July 1, 1913, becomes necessary.

Section 92 thereof is as follows: "No bonds other than those bonds for public improvements payable out of assessments upon the property benefited, and sewer bonds if otherwise authorized, shall be issued unless. approved by a vote of the people at a general or special election at which the question shall be submitted in the same manner as other measures are submitted under the initiative or referendum. This provision shall not apply to bonds heretofore authorized. All bonds of the city of Portland shall be sold to the highest responsible bidder."

That part of section 93 of the new charter involved herein is as follows: "The council of the city of Portland is hereby authorized to issue and sell all additional bonds heretofore authorized and not sold under the provisions of sections 118, 118½, 227, 425¾, and 429, authorizing the issuance and sale of municipal garbage collection bonds, of the charter of 1903, as amended; provided that the bonded indebtedness of the city of Portland shall at no time exceed the amount authorized under the provisions of section 88 of the charter of 1903 and provided further that the bonds issued and sold under the provisions of section 383a of the charter of 1903, as amended, shall not be con-

sidered as a part of the debt limit fixed by the said section 88. * * The several measures amendatory of and supplementary to section 118 of the charter of 1903, including section 118½ and section 425¾ of said charter and especially two measures adopted by the people of the city of Portland, the first at a special election held on the 8th day of November, 1910, entitled, 'A measure to provide for the improvement of water and harbor front of the city of Portland,' etc. * * to authorize the issuance and sale of bonds of the city of Portland up to two million five hundred thousand dollars ($2,500,000) for the above purposes, * * and to amend section 118 of the charter of the city of Portland as now amended by adding thereto the following four sections * * are hereby ratified and bonds issued under the same are hereby declared valid obligations of the city of Portland.''

2. The assertion in the clause last quoted that the bonds that had been issued pursuant to previous authorization were declared to be valid obligations of the city of Portland, while equivalent to a covenant for further assurance, was evidently unnecessary, for the bonds referred to, being valid when executed, could not have been rendered of no legal force by an amendment of the charter. If, however, by such declaration funding or refunding bonds had been contemplated, the assertion might have been proper: 5 McQuillin, Mun. Corp., § 2270. The asseveration in the clause mentioned that the measures referred to were ratified is important when read in connection with other parts of sections 92 and 93, for by such language the legal voters of the city of Portland, at an election held therein May 3, 1913, by express enactment reanimated such previous authorizations.

3. Construing *in pari materia* all parts of the sections last referred to so as to give force and effect to each

provision, a legislative intention is manifested to make the expressions, "bonds heretofore authorized," as used in section 92, and "all additional bonds heretofore authorized and not sold," as employed in section 93, signify grants of power to issue and sell bonds of the city of Portland, made prior to May 3, 1913, when the proposed charter was to be submitted for ratification or rejection. As against this determination, the only doubt that can possibly arise is as to the correct meaning of the word "authorized" as first used in a clause of section 93, to wit: "The council of the city of Portland is hereby authorized to issue and sell bonds heretofore authorized and not sold," etc. Construing the entire language of the sections under consideration, so as to ascertain the true legislative intention, it is evident that the proper signification of the word "authorized" as first employed in the clause last quoted means "permitted," to carry into effect the previous grants of power with respect to bonds "heretofore authorized and not sold." This power was conferred by a vote of the people of the city of Portland at the election held November 8, 1910. The manner of exercising such authority was delegated by the new charter upon the council, in the performance of which permission ordinance No. 27,698 was enacted, whereby the bonds involved herein can be legally executed. The power to issue and dispose of such municipal obligations having previously been granted by a vote of the qualified electors of the city of Portland, and the certificates of indebtedness being "additional bonds heretofore authorized and not sold. under the provisions of section 118" of the charter of 1903, no further approving vote by the people was necessary after the new charter became operative, nor is it essential to the validity of the bonds involved herein that the enactment of the council or of the commission of public

docks should have been passed or approved prior to July 1, 1913.

4. The writ having been corrected in the defective particulars adverted to in the former opinion, as set forth herein, the obligation to execute the dock bond is a ministerial duty devolving upon the defendants by virtue of their respective officers as mayor and auditor of the city of Portland. In the performance of such duty, as the defendants can exercise no discretionary power, *mandamus* will lie to compel them to execute the municipal obligations if all the conditions precedent have been observed: 5 McQuillin, Mun. Corp., § 2347. This conclusion disposes of the chief inquiry involved herein. The two subordinate questions, however, respecting prerequisite acts to be performed by others before the duty of the defendants dependent thereon can be discharged, require consideration, to wit: First. What authority if any, does the commission now possess to issue and dispose of bonds of the city of Portland under the amendment of section 118 of the charter of 1903, as amended November 8, 1910, and further amended May 3, 1913, and June 2d of that year? Second. Was the bid of the city treasurer, hereinafter mentioned, to purchase the dock bond directed to be sold to the plaintiff Teal entitled to a preference? These subjects will be discussed in the order stated.

5. The enactment of November 8, 1910, amending section 118 of the charter of 1903, created a dock commission composed of five members, who, having been duly appointed, were empowered "in the name of and under the corporate seal of the city of Portland to issue and dispose of bonds of the city of Portland to an amount not exceeding two million five hundred thousand dollars ($2,500,000)," which certificates of indebtedness were to be signed by the mayor and counter-

signed by the auditor, and their engraved signatures were also to be placed upon attached coupons. Some of the bonds thus authorized were issued and sold, and the money received therefrom was expended by the dock commission in making public improvements prior to May 3, 1913, when the city charter was amended by the people under an exercise of the initiative power, inaugurating a commission form of government that went into effect July 1, 1913, except that the provisions of the amended charter for an election were made operative immediately, upon the adoption of the municipal organic law May 3, 1913, and an election was held in the city pursuant to such provision on the first Monday in the following month.

Section 1 of the charter as thus altered, as far as material herein, reads: "All powers conferred and duties devolved by the sections of the charter of 1903, not repealed by this charter, upon the executive board, the water board, and other boards and commissions abolished by the charter shall, from and after the adoption of this charter, be exercised and performed by the council."

Section 93 of the charter enacted May 3, 1913, as far as deemed important herein, is as follows: "No board or commission now existing under the charter of 1903, as amended except (      ) the Civil Service Commission, shall continue to exist more than six months after this charter takes effect, and until such time such other boards or commissions shall be subject to full regulation or abolition by the council; provided, however, that the executive board shall cease to exist on July first, 1913. * * The council of the city of Portland is hereby authorized to issue and sell all additional bonds heretofore authorized and not sold under the provisions of section 118, * * provided that the bonded indebtedness of the city of Portland shall at no

time exceed the amount authorized under the provisions of section 88 of the charter of 1903. * *
(       )''

After the charter had been thus amended, and before the alteration went into effect, the qualified electors of the city of Portland, discovering that a grave mistake had been made in abolishing the dock commission, re-enacted section 93, to which reference has been made, at an election held in that city June 2, 1913, by inserting in the space hereinbefore indicated by the first parentheses, a clause as follows: ''The department of public docks and.'' Also by adding to the end of the section, in the space hereinbefore indicated by the second parentheses, these words: ''And this act shall take effect if it receives a majority of the votes cast thereon, notwithstanding any votes cast on the general amendments to the charter providing for a commission form of government.''

The ballot title of the last amendment was as follows: ''An act to amend section 93, as amended, of the charter of the city of Portland providing that the department of public docks shall not be abolished, but shall be retained and continued with the right to exercise all of the power conferred upon it by the provisions of section 118, as amended, of the charter creating the dock commission. Shall the department of public docks be retained as originally created? 126 yes, 127 no.''

It will be remembered that the original amendment of section 118 of the charter of 1903 empowered the commission designated as the ''Department of Public Docks,'' in the name and under the corporate seal of the city of Portland, to issue and dispose of bonds of the city of Portland. By section 93 of the charter as amended by a vote of the people May 3, 1913, the department of public docks was to have been abolished

July 1st of that year. That section also expressly empowered the council to issue and sell all additional bonds heretofore authorized and not sold under the provisions of section 118 of the charter of 1903 as amended November 8, 1910.

Construing *in pari materia* the enactment of November 8, 1910, creating the department of public docks, defining the powers conferred upon and the duties required to be performed by the dock commission, in connection with section 93 of the charter as amended May 3, 1913, and as that section was further altered June 2d of that year, so as to give force and effect to all the provisions if possible, there can be no doubt that the power of the department of public docks to issue and dispose of bonds of the city of Portland was withdrawn, and such authority conferred upon the council, to issue and sell all additional bonds heretofore authorized and not sold under the provisions of section 118 of the charter of 1903 as amended, provided, however, that such sale of additional bonds does not increase the indebtedness of the city beyond the limit prescribed by section 88 of the charter of 1903.

The conclusion thus reached seems to be in conflict with the ballot title of the proposed amendment of section 93 of the charter, as amended May 3, 1913. Assuming without deciding that the ballot title of an act to be voted upon by qualified voters under an exercise of the initiative power is like the title of a statute, and may be read in connection with the enactment in order to resolve ambiguities in the text, so as to ascertain, if possible, the legislative intent, such purpose must be found in the language of the act, and not in the title alone. In legislation enacted by qualified electors who seldom read an entire act submitted for adoption or rejection, but who often rely for their information upon the ballot title when read perhaps for the first

time after entering an election booth, it is possible that where such title is not as broad as the language of the act, the title will limit the enactment. But however this may be, the language of the act cannot be expanded to suit the ballot title when such heading or introductory clause of an enactment, wherein is briefly stated the objects and purposes, or the subject to which it relates, is broader than the act. It is admitted that no part of the charter as amended May 3, 1913, had become operative on the second day of the succeeding month, when section 93 of the amended organic act of the municipality was again amended, except the provision relating to an election which was held in the city on the first Monday in June, 1913. It will be remembered that section 1 of the charter as amended May 3, 1913, declared that all powers conferred or duties devolved by the charter of 1903 on all boards and commissions that were abolished by the later enactment should be exercised and performed by the council. This provision, in all probability, could have been impliedly altered by amending section 93 of the charter of May 3, 1913, but in order to accomplish such change, the amendment should have been specific in that particular, and left no room for doubt upon the subject.

The department of public docks could not have been reinvested of the power of which it had been deprived, to issue and dispose of bonds of the city of Portland, except by amending the section last referred to by inserting in place of the phrase "the council of the city of Portland" the words "the department of public docks," thereby making the clause read: "The department of public docks is hereby authorized to issue and sell all additional bonds heretofore authorized and not sold under the provisions of section 118 * * of the charter of 1903 as amended," or language of similar import. Not having done so the dock commission is

now powerless to issue or dispose of bonds of the city of Portland, and that authority is now conferred upon and must be exercised by the council of that city.

6. The amended alternative writ of *mandamus* states that pursuant to the provisions of the charter as amended May 3, 1913, the council of the city of Portland was regularly organized, and on September 4, 1913, enacted ordinance No. 27,698, providing for the issuance and sale of two dock bonds of that city, series "D1" each for a specified sum, approving the form of such municipal obligations and of the coupons attached thereto, and declaring an emergency whereby the ordinance went into immediate effect. The commission of public docks of the city of Portland on September 5, 1913, also enacted ordinance No. 29, ratifying, approving, and confirming municipal ordinance No. 27,698, which sanctionary ordinance also went into immediate operation. Pursuant to such enactments the defendant Barber, as auditor of the city of Portland, on September 8, 1913, caused to be published in the city official newspaper a notice to the effect that sealed proposals would be received by the city council until 10 o'clock A. M. on September 10, 1913, for the whole or any part of the dock bonds of the series and number specified, each bid to be accompanied by a certified check for an amount equal to 5 per cent of the full value of the bonds desired, the delivery of which was to have been made September 11, 1913. Within the time thus specified the plaintiff Henry Teal submitted to the mayor and council a written proposal, as directed in the notice, to purchase the bonds indicated, stipulating to pay the amount of the face value thereof and accrued interest to date of delivery, his bid being accompanied by a certified check as required. William Adams, the city treasurer, also submitted to the mayor and the council a written bid for the bonds

thus advertised, engaging to pay therefor par and accrued interest, stating that such proposal was made "for the sinking fund of the city of Portland, as covered by section 113 of the city charter" of the compilation of the auditor of that city. The section of the new organic act of the municipality as arranged by the auditor is the same as section 90 as set forth in the amended writ. The council rejected the bid of the city treasurer, and accepted that of the plaintiff Teal, whereupon these proceedings were instituted to ascertain the rights of the respective bidders, the defendants refusing to execute such bonds until the question is determined.

A clause of section 108 of the charter as amended May 3, 1913, reads: "The auditor of the city of Portland is hereby authorized to number the foregoing sections, providing for a commission form of government, and insert the same in the proper place in the charter of 1903, and thereafter have the same published in pamphlet form." Complying with that requirement the auditor gave to section 90 of the charter as amended May 3, 1913, the number 113. So much of that section as is involved herein will be quoted, as follows: "Whenever bonds of the city of Portland are offered for sale, and there is a balance to the credit of any sinking fund or special fund, not invested, said bonds may be awarded at par and accrued interest to the city treasurer as an investment for said fund." It is contended by defendants' counsel that the word "may" in the language last quoted should be construed as "must," and, this being so, the bid made by the city treasurer for the bonds advertised for sale should have been accepted and the bid of the plaintiff Teal rejected, but, the council having determined to the contrary, the defendants are not required to sign, seal and deliver the bonds so awarded to Teal.

In *Kohn & Co.* v. *Henshaw,* 17 Or. 308, 311 (20 Pac. 629, 631), Mr. Justice STRAHAN, in discussing an application of the rule invoked herein, says: "It is a general principle in statutory construction that where the word 'may' is used in conferring power on an officer, court, or tribunal, and the public or a third person has an interest in the exercise of the power, then the exercise of the power becomes imperative."

" 'May,' " says Mr. Justice LORD in *Deane* v. *Willamette Bridge Co.,* 22 Or. 167, 176 (29 Pac. 440, 443, 15 L. R. A. 614), "is construed as 'must' only in cases where the legislature meant to impose an absolute and positive duty, and not merely a discretionary power." To the same effect as illustrating the legal principle under consideration, see the cases of *Smith* v. *King,* 14 Or. 10, 14 (12 Pac. 8); *McLeod* v. *Scott,* 21 Or. 94, 109 (26 Pac. 1061, 29 Pac. 1); *McFarlane* v. *Cornelius,* 43 Or. 513, 524 (73 Pac. 325, 74 Pac. 468); *In re Conant's Estate,* 43 Or. 530, 535 (73 Pac. 1018).

Construing section 90 of the new charter in the light of the rule thus adopted in this state, we are satisfied that the word "may" as there used confers upon the council only discretionary power, in the exercise of which the sale of bonds may be awarded to the city treasurer or to any other purchaser. Any other conclusion would make the discretion of the city treasurer controlling, and such deduction was never contemplated by the charter.

Believing that the duty to execute the bonds awarded to the plaintiff Teal is clear, and that the prerequisite acts required to be performed by all others have been properly discharged, the writ herein should be made peremptory, and it is so ordered.

PEREMPTORY WRIT ALLOWED.