[Civil No. 4321.   Filed June 23, 1941.]

[114 Pac. (2d) 894.]

D. C. O'NEIL, WARREN PETERSON and THAD MOORE, as Individuals and as Members of the State Tax Commission of Arizona; and WILLIAM PETERSEN, as an Individual and as State Treasurer of the State of Arizona, Appellants, v. ARIZONA HORSEMEN'S ASSOCIATION, a Corporation, Appellee.

Mr. Joe Conway, Attorney General, Mr. Earl Anderson, Special Assistant Attorney General, and Mr. W. E. Polley, Assistant Attorney General, for Appellants.

Messrs. Woolf & Shute and Mr. W. T. Elsing, for Appellee.

ROSS, J.—The Arizona Horsemen's Association, a nonprofit corporation, in February of 1940, held a one-day horse-racing meet at the state fair grounds and used the pari-mutuel system of determining the results of the different races run on that day. The State Tax Commission demanded of the association 4% of all moneys received by it from pari-mutuel sales, amounting to $2,667.20, which was paid under written protest. The tax commission paid this sum to the state treasurer. Thereafter the association brought this action against the tax commission and the individual members thereof and the state treasurer to recover such sum.

The association was "organized . . . for the purpose of encouraging interest in horses and other livestock; in promoting the good breeding of animals in Arizona; in conducting livestock shows and in raising money for the furtherance of these objects but not for the purpose of receiving profits."

The association did not apply for a permit to hold said meet, which is the only one that it has ever held.

The question presented to the court was whether Chapter 79, Laws of 1935 (sections 73–1601 to 73–1608, Arizona Code 1939), entitled:

"An act relating to horse-racing and dog-racing meets; providing for permits therefor; authorizing the use of parimutuel machines, and providing for the collection of revenue therefrom,"

by its provisions covered the one-day meet of the association and imposed the duty on the association to pay the tax demanded. The trial court held that such chapter did not, and gave the association judgment as prayed for.

The tax commission has appealed, contending that under such law the association should pay the tax. The question involves a construction of Chapter 79, *supra.*

This chapter authorizes horse- and dog-racing meets but requires "any person, copartnership, association, or corporation" before putting on a meet to apply to and obtain from the tax commission a permit to do so. Sec. 1. This permit may be for one day or any number of days not greater than thirty. Sec. 2. Section 5 reads as follows:

"*Parimutuel Machines; Revenue.* The use of parimutuel machines at racing meets held as herein provided is hereby authorized, under rules and regulations to be prescribed by the commission [tax commission]. The commission shall receive 4 per cent, of all moneys received from parimutuel sales, for the privilege of conducting such machines and the owner and/or operator of such machines shall receive 9%. The collection of such fee to be paid the commission shall be made each day after the conclusion of the races and shall be in addition to any license or other charge that may be made by state or local authorities for conducting said racing meet. For the purpose of ascer-

taining the amount of the fee the commission or its agents shall have access to all such machines and to the books and records connected therewith or related to the operation thereof. All other forms of wagering or betting on the result of a horse race or dog race shall be illegal, when conducted on the premises of such racing track.''

And section 8 reads:

"Exceptions. The provisions of this act relating to permits for horse-racing and dog-racing meets shall not apply to such meets not exceeding one day in length, nor to a racing program conducted by any state, county, or district fair held for educational or publicity purposes only.''

The association contends it falls within the exceptions and is not liable for the tax. The fact that the association's meet in February was for one day is about the only thing that lends color to the claim of exemption. A horse- or dog-race meet for one day, under the exceptions, may be had without a permit from the tax commission; but, if pari-mutuel machines are used, even if the meet is for one day only, section 5 provides that "the commission shall receive 4 per cent, of all moneys received from parimutuel sales, for the privilege of conducting such machines." What it really amounts to is a license for the privilege of using pari-mutuel machines. No tax is charged for the permit, whether for one day or thirty days, nor against gate receipts or admissions to the grandstand; but, if pari-mutuel machines are used, a charge of 4% of the receipts from their use must be paid to the state.

It will be noted that "any state, county, or district fair" (section 8) is not required to apply for or obtain a permit to conduct a program of horse racing but "any person, co-partnership, association, or corporation" is (section 1) and also to pay a percentage of the receipts for sales on pari-mutuel machines. There

is no provision in the act requiring fairs or "meets not exceeding one day in length" to either obtain permits or pay anything when they are "held for educational or publicity purposes only." Sec. 8.

■ The title of the act indicates that it is a revenue measure. According to it, one of the purposes of the act was the "authorizing the use of parimutuel machines, and providing for the collection of revenue therefrom," and the title is a fair index of the body of the act. We think the act quite sufficiently evidences an intention by the legislature that "any person, co-partnership, association, or corporation" (section 1) that uses a pari-mutuel machine at racing meets, as provided in the act, shall obtain a license and pay the tax, but that the provisions relating to the obtaining of permits from the tax commission shall not apply when the racing meet is held by "any person, co-partnership, association, or corporation" (section 1) not to exceed one day in length, nor "to a racing program conducted by any state, county, or district fair held for educational or publicity purposes only." Sec. 8.

We have suggested that the act appears to be a tax measure. It will be noticed it is numbered Chapter 79. It was approved March 25, 1935. Chapter 78 is what is known as the luxury tax act, and was approved March 23, 1935. Chapter 77 is an act taxing gross incomes or gross sales and was approved March 23, 1935. All three of these acts are revenue acts. They all have the same purpose; the obtaining of revenues for the state's general fund.

■ For the above reasons, we conclude the Arizona Horsemen's Association, plaintiff, was properly required to pay the 4% tax collected from it and that it is not entitled to recover back such tax.

In this view, other questions raised by the tax commission are immaterial and we do not decide them.

The judgment of the lower court is reversed and the cause remanded, with directions to dismiss the complaint.

LOCKWOOD, C. J., and McALISTER, J., concur.