[Civil No. 4674. Filed October 18, 1943.]

[142 Pac. (2d) 211.]

WHITFIELD BROOKE and J. P. SMITH, copartners doing business as the ARIZONA KENNEL CLUB, Petitioners, v. THAD M. MOORE, JOE HUNT and D. C. O'NEIL, as members and as constituting the ARIZONA TAX COMMISSION, Respondents.

Mr. George Sorenson and Mr. Mark Wilmer, for Petitioners.

Mr. Joe Conway, Attorney General, and Mr. Earl Anderson, Chief Assistant Attorney General, for Respondents.

ROSS, J.—The petitioners, Whitfield Brooke and J. P. Smith, copartners doing business as the Arizona Kennel Club, on September 22, 1943, petitioned this court for an alternative writ of *mandamus* to compel the respondents, Thad M. Moore, Joe Hunt and D. C. O'Neil, members of the Arizona Tax Commission, to issue to them a permit to hold a dog-racing meet at the Nace Municipal Stadium, located adjacent to the City of Phoenix, between the dates of October 23 and November 21, 1943, inclusive, or show cause.

In response to the alternative writ the Attorney General, in behalf of respondents, has filed a motion to quash for the reasons (1) that the petition does not state a claim upon which any relief can be granted or entitling the petitioners to the writ; (2) that granting of a permit for a racing meet under the law is discretionary with the commission and that the commission's determination that "it was not for the best interests of the public at this time to grant the permit" is final. The quesion is, do the defenses set up by the Attorney General excuse the commission from granting the permit prayed for?

Section 73–1601, Arizona Code 1939, reads as follows:

"Horse-racing and dog-racing meets may be held in this state only in the manner provided herein. Any person, co-partnership, association, or corporation desiring to hold a horse-racing or dog-racing meet shall make application for a permit therefor to the state tax commission. Said application shall state the names of all persons financially interested in the proposed meet, the name of the manager thereof, the dates when and place where it is desired to hold the same, the class of races to be held, the prizes or other stakes to be offered, and such information as the commission may require."

The petition for the writ conforms in the minutest detail with such section. It shows petitioners' application to the commission is in regular form and, in substance, it is as this section provides.

Section 73–1602, Id., reads:

"If the commission, after investigation, shall find that the reputation of the applicant for honesty, integrity, and fair dealing is good, and that the plan submitted for such meeting is not objectionable, it may grant the application. No such racing meet shall be held for a period longer than thirty (30) days."

The commission does not question that "the reputation of the applicant for honesty, integrity, and fair dealing is good," nor does it object to the plan submitted by the petitioners for such meet. All these things appearing, the statute, section 73–1602, states the commission "may grant the application" for a racing meet. The sole question for our decision is the meaning that shall be given the word "may" as used in the above context. In other words, is it to be given a permissive or a mandatory meaning. If the former meaning is ascribed to the word, the legislature has made it possible for the commission to grant permits for dog racing (and also horse racing) only to such persons or concerns as the commission may be in-

clined or disposed to favor and to reject all other applications for proposed meets. Was such a result intended or contemplated by the lawmakers in enacting this statute? Answering this question, we think not. In determining what the legislature meant by the use of the word "may" instead of the word "shall," this court has said:

"In *McLeod* v. *Scott,* 21 Or. 94, 26 Pac. 1061, [29 Pac. 1], it is said:

" 'It is a general principle of statutory construction that, when the word "may" is used in conferring power upon any officer, court, or tribunal, and the public or a third person has an interest in the exercise of the power, then the exercise of the power becomes imperative, and Endl. Interp. St. par 310, Sedg. St. & Const. Law, 377, and Potter, Dwar. St. p. 220, note 27, are referred to as authority. *Smith* v. *King,* 14 Or. 10, 12 Pac. 8, is to the same effect, and the undoubted weight of authority is the same way. *People* v. *Commissioners,* 130 Ill. 482, 22 N. E. 596, 6 L. R. A. 161, and note.' " *Arizona Corp. Comm.* v. *Heralds of Liberty,* 17 Ariz. 462, 471, 154 Pac. 202, 206.

■■  We think under this rule both the public and petitioners have an interest in the exercise of the power conferred on the commission and in such circumstance the word "may" should be given the imperative or mandatory meaning of "shall," otherwise the right to hold dog- or horse-racing meets is subject to the arbitrary and capricious action of the commission or a majority thereof. In this case the application for the permit was rejected by a majority of the commission, one member, D. C. O'Neil, voting to grant it.

"Powers conferred on public officers are generally construed as mandatory although the language may be permissive, where they are for the benefit of the public or of individuals. . . . " 43 Am. Jur. 76, sec. 259.

The act authorizing dog and horse racing is "a revenue measure." *O'Neil* v. *Arizona Horsemen's Ass'n*, 57 Ariz. 424, 114 Pac (2d) 894.

We are of the opinion the petitioners are entitled to a dog-racing permit as prayed for and, accordingly, the alternative writ of *mandamus* is made peremptory.

McALISTER, C. J., and STANFORD, J., concur.