167 P.3d 122

**CITY OF CHANDLER, an Arizona Municipal Corporation, Plaintiff/Appellee,**

v.

**ARIZONA DEPARTMENT OF TRANS-PORTATION, an agency of the State of Arizona, Defendant/Appellant.**

**No. 1 CA–CV 05–0631.**

Court of Appeals of Arizona, Division 1, Department D.

Sept. 18, 2007.

Chandler City Attorney's Office by James R. Cairns, III, Chandler, Attorneys for Plaintiff/Appellee.

Arizona Attorney General's Office by James R. Redpath, Assistant Attorney General, Ron J. Aschenbach, Assistant Attorney General, Phoenix, Attorneys for Defendant/Appellant.

## OPINION

SNOW, Judge.

¶ 1 The Arizona Department of Transportation ("ADOT") appeals the summary judgment requiring it to reimburse the City of Chandler for the relocation of utility lines necessitated by the construction of a state highway. Because the trial court erred in interpreting Arizona Revised Statutes ("A.R.S.") section 28–7156 (2004) to mandate such reimbursement, we vacate the summary judgment and remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 Chandler owns several water and sewer utility lines that had to be moved to construct the Santan Freeway. Chandler and ADOT disputed which of the two parties was required to pay for the relocation. Chandler initially claimed "prior rights" to the use of the land in which the utility lines were located. Under the common law doctrine of prior rights, if Chandler first placed its utility lines on the property before any public road was located on it, Chandler's rights would be deemed superior and ADOT would be obliged to pay for the relocation of the utility lines. *State ex rel. Herman v. Elec. Dist. No. 2 of Pinal County,* 106 Ariz. 242, 244, 474 P.2d 833, 835 (1970). ADOT, however, contested Chandler's claim, arguing that because Chandler had not placed the utility lines under the road until sixty years after it had been established by Maricopa County and had not obtained a right-of-way permit when it did so, Chandler had no prior rights. To avoid construction difficulties caused by the dispute, Chandler and ADOT agreed that Chandler would pay for the relocation and ADOT would reimburse Chandler if the city prevailed on its prior rights claim.

¶ 3 Chandler subsequently paid for the relocation and filed a declaratory action asserting the prior rights claim. It later amended its complaint to add a separate statutory reimbursement claim against ADOT pursuant to A.R.S. § 28–7156.

¶ 4 Both parties filed motions for summary judgment. The trial court initially granted ADOT's cross-motion for summary judgment finding that Chandler did not have prior rights and that A.R.S. § 28–7156 did not require ADOT to pay for the relocation of the utility lines. The court, however, granted Chandler's motion for reconsideration and thereafter found that there were material issues of fact regarding common law prior rights, but entered summary judgment in Chandler's favor based on A.R.S. § 28–7156. ADOT timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101 (2003).

## ANALYSIS

### A. A.R.S. § 28–7156

¶ 5 The primary issue on appeal is whether A.R.S. § 28–7156 requires ADOT to reimburse Chandler for relocating its utility lines or grants ADOT discretion to determine whether it will authorize reimbursement. A.R.S. § 28–7156 provides in relevant part:

A. The director *may* authorize the reimbursement to a city, town or county for the cost of labor, equipment, materials, preliminary engineering and right-of-way purchase required to adjust or relocate a utility facility if all of the following apply:

1. An existing city, town or county public highway or street is established as a state highway.
2. At the time the highway or street is established as a state highway, a utility facility belonging to a city, town or county exists within the right-of-way of the highway or street.
3. It becomes necessary to adjust or relocate the utility facility due to modification or improvement of the state highway.

B. The director *shall* determine the payment for labor, equipment and materials. The cost of relocation shall not exceed the value of the substitute utility facility. The director shall base the determination of the value of a substitute utility facility on the costs for replacement of a like facility. Costs of relocation *shall* exclude any betterments or increases in the size or capacity beyond those of the existing utility facility.

(Emphasis added.)

¶ 6 We review questions of statutory interpretation *de novo. Phelps Dodge Corp. v. Arizona Dep't of Water Resources,* 211 Ariz. 146, 148, ¶ 9, 118 P.3d 110, 112 (App.2006). Our goal in statutory interpretation is to determine the legislative intent in adopting the provision. *In re Estate of Winn,* 214 Ariz. 149, 151, ¶ 8, 150 P.3d 236, 238 (2007); *Haas v. Colosi,* 202 Ariz. 56, 58, ¶ 6, 40 P.3d 1249, 1251 (App.2002). In doing so, we review the language of the statute, and when the plain language is unambiguous and conveys a clear and definite meaning, its plain and obvious meaning must be followed without resort to the rules of statutory construction. *Automatic Registering Mach. Co. v. Pima County,* 36 Ariz. 367, 370, 285 P. 1034, 1035 (1930); *see HCZ Constr., Inc. v. First Franklin Fin. Corp.,* 199 Ariz. 361, 364, ¶ 10, 18 P.3d 155, 158 (App.2001) (holding that words are given their ordinary meaning unless the context of the statute requires otherwise).

¶ 7 On appeal, ADOT argues that "shall" and "may" have distinct meanings, "shall" denoting a mandatory obligation and "may" granting discretion to act. Thus, ADOT asserts that the plain meaning of section 28–7156 "is that the Director [of ADOT] has the discretion to decide whether to reimburse under subsection (A), but that the amount of any discretionary reimbursement 'shall' comply with subsection (B)." This interpretation, it contends, is further supported by the legislative history of the statute.

¶ 8 Conversely, Chandler argues that, because section 28–7156 was enacted specifically for the benefit of cities like Chandler and its residents, the exercise of the power granted under subsection (A) should be construed as mandatory "even if . . . the statute utilizes the word 'may' rather than . . . 'shall.' " *See e.g., Brooke v. Moore,* 60 Ariz. 551, 142 P.2d 211 (1943) ("Powers conferred on public officers are generally construed as mandatory although the language may be permissive, where they are for the benefit of the public or of individuals.") (quoting 63C Am.Jur.2d Public Off § 259 (1997)). It further argues that subsection (D) of the statute demonstrates that, when construed in context, the "may" in subsection (A) should be interpreted as a mandatory duty as opposed to a discretionary choice.

¶ 9 We conclude that subsection (A) grants the Director of ADOT discretion to reimburse Chandler for the utility relocation but does not require the Director to do so. When "the language of a statute is plain or unambiguous and the meaning does not lead to an impossibility or an absurdity, courts must observe the natural import of the language used and are not free to extend the meaning though the result may be harsh, unjust or mistaken policy." *Members of Bd. of Educ. of Pearce Union High Sch. Dist. v. Leslie,* 112 Ariz. 463, 465, 543 P.2d 775, 777 (1975).

¶ 10 "[The] use of the word 'may' generally indicates permissive intent . . . while 'shall' generally indicates a mandatory provision. . . . If a statute employs both mandatory and discretionary terms, we may infer that the legislature intended each term to carry its ordinary meaning." *Walter v. Wilkinson,* 198 Ariz. 431, 432, ¶ 7, 10 P.3d 1218, 1219 (App.2000) (citations omitted). We thus presume that the Legislature was aware of the difference between the two words and

meant each to carry its ordinary meaning. *HCZ Constr., Inc.,* 199 Ariz. at 365, ¶ 15, 18 P.3d at 159 (citations omitted).

¶ 11 To the extent that the court in *Brooke* held that, in certain contexts, "may" should be interpreted to mean "shall," it is distinguishable. In *Brooke,* the Arizona Supreme Court construed a statute that set forth the requirements for obtaining permits to hold horse and dog-racing meets. 60 Ariz. at 552–53, 142 P.2d at 211–12. The statute provided that, if the Arizona Tax Commission investigated and found that the applicant had a reputation for honesty and fair dealing and the plan was not objectionable, the Commission "may" issue a permit. *Id.* at 553, 142 P.2d at 211–12. Having made these two findings, the Commission claimed it could nevertheless deny the application. *Id.* at 552, 142 P.2d at 212. The court, however, interpreted "may" as mandatory, concluding that the Legislature had not granted the Commission any discretion to deny a racing permit in cases in which the Commission found that the prerequisites to granting the license had been satisfied. *Id.* at 554, 142 P.2d at 212. The court reasoned that authorizing dog racing would create revenue and would thus benefit both the public and the petitioners, and, because it could not identify any conflicting public interests, it would be arbitrary and capricious to interpret the statute as providing the Commission discretion to deny an application under such circumstances. *Id.* at 554–55, 142 P.2d at 212.

¶ 12 In the present case, we cannot conclude, as did the court in *Brooke,* that allowing ADOT the discretion to deny reimbursement would be arbitrary and capricious. Although interpreting "may" as mandatory would no doubt benefit Chandler and its residents, allowing ADOT discretion to decide whether it will expend its budgeted funds for relocation purposes, or to expend them for other ADOT functions, which may benefit other Arizona taxpayers, is neither arbitrary nor capricious. ADOT is subject to certain budgetary constraints and thus funds expended by ADOT to reimburse

Chandler for the cost of relocating its utility lines are unavailable to ADOT for other agency purposes. In his deposition, Victor Mendez, the Director of ADOT, stated that one of the factors he considered in choosing not to reimburse Chandler under section 28–7156 was that, under the circumstances, reimbursement would create significant and tremendous liabilities to ADOT programs, and thus, it was in the best interest of the State to deny Chandler's request for reimbursement. Because there are countervailing public interests to the benefit Chandler and its residents would receive if ADOT reimbursed them for the relocation of their utility lines, the rule set forth in *Brooke* simply does not apply.

¶ 13 Chandler further argues that subsection (D) of the statute demonstrates that the "may" used in subsection (A) should be construed as mandatory rather than permissive. We disagree. Section 28–7156(D) provides that, "[o]nce established pursuant to a relocation prescribed by this section, a city's, town's or county's rights remain with the applicable city, town or county for which the relocation occurred." Without deciding what future "rights" subsection (D) bestows, it only applies once a relocation "prescribed by this section" occurs. Since the section itself does not prescribe relocations per se but only authorizes the director of ADOT to reimburse for such relocations, we presume that the "relocations" referred to by the statute are those relocations that are reimbursed by ADOT. Thus, subsection (D) only grants such continuing rights once ADOT has reimbursed the city for a relocation. Thus read, subsection (D) offers no reason to presume that the Legislature could not have intended to give the ADOT Director discretion to make a reimbursement decision in the first place and that the plain wording of the statute granting the Director such discretion must be disregarded.

¶ 14 We further conclude that the legislative history of section 28–7156 demonstrates that the statute was intended to grant discretion, not to create an obligation. The original version of A.R.S. § 28–1834 (now A.R.S. § 28–7156)[1] was introduced in 1989 as Sen-

---

1. The Transportation Code was revised by 1995 Ariz. Sess. Laws, ch. 132, effective Oct. 1997 and

1997 Ariz. Sess. Laws, ch. 1.

ate Bill 1019. The Amended Fact Sheet for Senate Bill 1019 stated that the bill was necessary because, in its absence, ADOT had no authority to reimburse cities for the cost of the relocation of utility lines unless the city had prior rights, which, the Legislature did not believe were extended to local governments by the common law prior rights doctrine. Senate Fact Sheet, S.B. 1019, 39th Leg., 1st. Reg. Sess. (1989). This "place[d] a financial burden on cities and counties which [were] often unable to pay for the required relocation." *Id.* Thus, the stated purpose of the bill was "[t]o authorize the director [of ADOT] to reimburse cities, towns, and counties for the costs of relocating utilities originally installed in streets that later are incorporated into the state highway system." *Id.* By authorizing the ADOT Director to reimburse towns or counties, however, the Legislature did not compel the ADOT Director to do so.

¶ 15 During the House Transportation Committee's hearing on the bill, Representative Kromko suggested substituting the language "the Director shall" for the phrase "the Director may" in subsection (A). Minutes of Committee on Transportation, S.B. 1019, 39th Leg., 1st Reg. Sess. (1989). Despite this suggestion, however, the Legislature made no such change. We have previously observed that, when the Legislature makes the conscious choice to leave the word "may" in the statute as opposed to substituting the word "shall", we presume that the Legislature intended the statute to grant discretion as opposed to imposing a mandatory obligation. *See Crum v. Maricopa County*, 190 Ariz. 512, 515, 950 P.2d 171, 174 (App.1997) (holding that the Legislature's choice to leave "may" within a statute indicated that the Legislature intended the statute to be permissive instead of mandatory).

¶ 16 Despite Chandler's contention to the contrary, interpreting "may" as discretionary does not render the statute meaningless. Prior to the Legislature's enactment of sec-

tion 28–7156, the Legislature was apparently of the view that a city, town, or county did not have prior rights and thus ADOT did not have the authority to reimburse cities for utility relocation even if it wished to do so. Senate Fact Sheet, S.B. 1019. Thus, the statute granted ADOT the legal ability to reimburse other governments for utility relocation when previously it did not believe that authority existed through the common law prior rights doctrine.[2]

■ ¶ 17 Therefore, considering the language, statutory history, and context of the statute, we conclude that it authorizes, but does not compel, the Director of ADOT to reimburse cities, towns, and counties for the cost of relocating their utility lines if the conditions for reimbursement are satisfied.

### B. Abuse of Discretion

■ ¶ 18 In the alternative, Chandler argues that, even if the authority granted pursuant to section 28–7156 is discretionary, ADOT acted arbitrarily and capriciously by failing to exercise its discretion and provide reimbursement.

¶ 19 In its order, however, the trial court granted summary judgment on a legal interpretation, not a factual finding that ADOT abused its discretion. It never reached the abuse of discretion issue and made no findings of fact on which we could affirm a finding of such an abuse. *See e.g., City of Phoenix v. Consol. Water Co.*, 101 Ariz. 43, 45, 415 P.2d 866, 868 (1966) (holding that the purpose behind requiring the trial court to make findings of fact is to enable an appellate court to examine the basis upon which the trial court relied in reaching its ultimate judgment). Therefore, we are not able to affirm on that basis.

### C. Administrative Hearing

■ ¶ 20 Additionally, Chandler claims that it was denied its opportunity to challenge ADOT's decision before an administrative law judge pursuant to A.R.S. § 41–

---

**2.** Citing the corrected affidavits of Bruce Vana, the manager of The Utilities and Railroad Engineering Section of ADOT, and Victor Mendez, ADOT now contends that after the enactment of section 28–7156, it was in fact their policy to reimburse cities for the relocation of their utility lines if the utility lines were located in the city's

own rights of way regardless whether the utility lines had been constructed after the street rights of way were established even if the city did not have prior rights. They assert, however, that it was still within their discretion to refuse Chandler reimbursement under the particular facts of this case.

1001.01(A)(11) (2004)[3]. Chandler, however, never requested such a hearing but filed a declaratory judgment action and thus, can scarcely complain on appeal about being denied the ability to respond and present evidence on the reimbursement decision rendered by ADOT. *See e.g., Schlecht v. Schiel,* 76 Ariz. 214, 220, 262 P.2d 252, 256 (1953) ("By the rule of invited error, one who deliberately leads the court to take certain action may not upon appeal assign that action as error.").

## D. ADOT Policy Statement

■ ¶ 21 Finally, Chandler argues that ADOT abused its discretion by ignoring its "formally adopted" implementation policy entitled "Prior Rights by City, Town or County for Utility Relocation," which Chandler contends mandated reimbursement pursuant to section 28–7156.

■ ¶ 22 ADOT, as an administrative agency, has a duty to follow its own rules and regulations. *Ariz. Dep't of Revenue v. Care Computer Sys., Inc.,* 197 Ariz. 414, 418, ¶ 18, 4 P.3d 469, 473 (App.2000). ADOT argues, however, that the policy was never adopted as a formal rule and thus, is nothing more than a substantive policy statement, which is advisory only and not enforceable. *See* A.R.S. § 41–1001(20) (Supp.2006), defining a "substantive policy statement" as:

a written expression which informs the general public of an agency's current approach to, or opinion of, the requirements of … [a] state statute, administrative rule or regulation, … including, where appropriate, the agency's current practice, procedure or method of action based upon that approach or opinion. *A substantive policy statement is advisory only.* (Emphasis added).

¶ 23 Even assuming that ADOT could be bound by its substantive policy statement in this case, however, it would not serve as a basis for affirming the trial court here. Presumably because the trial court did not enter judgment on this ground, the court did not determine whether Chandler qualified for re-imbursement under the requirements of ADOT's policy. Among other conditions, the policy required that to be eligible for reimbursement "[a] local entity utility facility [not be] constructed within a highway corridor after the corridor was established without department approval." We cannot determine based upon this record whether Chandler complied with this condition. Therefore, the existence of ADOT's substantive policy statement is an insufficient basis on which we may affirm the trial court's grant of summary judgment.

## E. Prior Rights

¶ 24 Neither Chandler nor ADOT appealed the trial court's determination that there are material factual disputes whether Chandler had common law prior rights. Thus, we express no opinion concerning it.

## CONCLUSION

¶ 25 For the foregoing reasons, we vacate the trial court's grant of summary judgment in Chandler's favor and remand for proceedings consistent with this opinion.

CONCURRING: MAURICE PORTLEY and DONN KESSLER, Judges.

---

3. Section 41–1001.01(A)(11) provides: "[t]o ensure fair and open regulation by state agencies, a person: … [m]ay have the person's administrative hearing on contested cases and appealable agency actions heard by an independent administrative law judge as provided in articles 6 and 10 of this chapter."