NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

EMP FORWARDING LLC, et al., *Plaintiffs/Appellants*,

*v.*

DONNA PRIETO, et al., *Defendants/Appellees*.

No. 1 CA-CV 19-0392
FILED 4-7-2020

Appeal from the Superior Court in Maricopa County
No. CV2016-014905
The Honorable Christopher T. Whitten, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Law Offices of Donald W. Hudspeth, P.C., Phoenix
By Janae Perry-Meier, Michael D. Malin
*Counsel for Plaintiffs/Appellants*

Bellah Perez, PLLC, Glendale
By Cristina Perez Hesano
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge David B. Gass joined.

---

**C R U Z**, Judge:

¶1 Appellants EMP Forwarding LLC ("EMP") and FWF Logistics, LLC ("FWF"), (collectively the "Appellants") challenge the superior court's ruling reducing the jury's damages award in their favor and excluding Appellee Colt Transportation, LLC ("Transportation") from the verdict forms. Appellants also challenge the court's attorneys' fees and costs award and its decision not to award exemplary damages under Arizona Revised Statutes ("A.R.S.") section 44-403 or sanctions under Arizona Rule of Civil Procedure ("Rule") 68. We affirm on all issues except for attorneys' fees and costs and remand for further proceedings on that issue.

**FACTUAL AND PROCEDURAL HISTORY**

¶2 Appellee Donna Prieto worked for EMP, a broker for Landstar Systems, Inc. ("Landstar"), from December 2015 through April 27, 2016. Prieto's employment agreement with EMP contained: (1) a one-year covenant not to compete; (2) a one-year non-solicitation agreement; and (3) a confidentiality agreement in which she agreed to "not disclose to any other person or entity EMP's trade secrets and confidential business information, including, but not limited to, information regarding EMP's services, products, customers, customer lists, bookkeeping, written contracts and agreements, rates, compensation or techniques."

¶3 Appellee Colt Specialized, LLC ("Specialized") hired Prieto the day after her employment with EMP ended. The day after that, she received a call from Ameron Water Transmission Group ("Ameron") asking if Landstar could haul a load. Specialized subsequently signed a broker/shipper agreement with Ameron.

¶4 In September 2016, EMP and FWF sued Prieto, Specialized, and Transportation, a carrier associated with Specialized, alleging Prieto breached her employment agreement, misappropriated trade secrets, and breached her fiduciary duty to Appellants. They further alleged that

Specialized and Transportation tortiously interfered with Prieto's employment agreement and used their trade secrets and confidential information "in direct competition." They also sought exemplary damages for the alleged misappropriation under A.R.S. § 44-403(B).

¶5        Appellees asserted defamation, tortious interference, and civil conspiracy counterclaims against Appellants.[1] The superior court granted summary judgment to Appellants on the counterclaims but also granted partial summary judgment to Appellees, finding Prieto's non-compete agreement was "overbroad and beyond repair by blue pencil."

¶6        Appellants' remaining claims proceeded to trial, where they contended Appellees caused them to lose three Ameron "lanes" of business, referred to in this decision as "90 Hyperloop," "180 Hyperloop," and "165 Lewis & Clark." They conceded, however, that Ameron only issued a written purchase order for the 90 Hyperloop lane.

¶7        Appellees moved for judgment as a matter of law at the close of Appellants' case. The superior court denied the motion but observed that it did not see "what evidence there is of reasonable expectation of business or of damages that are related to misconduct or omission of the Defendants" regarding the 180 Hyperloop and 165 Lewis & Clark loads and "that we really don't even know if they have it other than somebody read about it in a newspaper that they were finished." The court stated that it would "revisit" the issue "after the verdict's in."

¶8        After Appellees rested, the parties and the superior court reviewed verdict forms. The court invited discussion on whether to remove Transportation from the verdict forms, leaving only Prieto and Specialized:

> THE COURT: What -- I'm going to ask the Plaintiffs. What's the -- if we have Colt Specialized in there, is that harm -- does that mess you up in any way?
>
> Instead of talking about Colt entities -- I mean, I think that the evidence is fairly clear that [Prieto] worked for Colt Specialized. There's one paycheck that comes from Transport, but the reason for it has been explained. Does it interfere with what you're arguing at all to say that she worked for Colt Specialized?

---

[1]        Appellees voluntarily dismissed their third-party complaint alleging the same claims against Landstar.

MS. PERRY-MEIER: Our argument is that the two are essentially one and the same, and part of the reason for that is, as we showed through the bank statements, there's significant commingling of the assets between the two and loans between the two. And the concern is that, you know, if one award is higher than the other, that the assets may have been moved into one, or -- they're just really not --

THE COURT: Well, you're not going to get two -- if you treat them as one you're going to get one verdict. And there's no -

MS. PERRY-MEIER: Correct.

THE COURT: -- there's no instance in which you get a verdict against Colt Specialized and a different verdict against Colt Transport.

MS. PERRY-MEIER: Okay. I was thinking maybe they'd award different amounts against each one. But if that's the case, then -- if it wouldn't end up like that, then --

THE COURT: I'm going to change them all. I think you're right.

MS. PERRY-MEIER: Yeah. Then that's not as big a deal.

THE COURT: I'll go through the verdict form and the jury instructions this morning and change all references to Colt Specialized.

Appellants' counsel asked that Transportation remain in the *respondeat superior* jury instruction, but the court declined.

¶9            The superior court also prepared separate verdict forms against Prieto and Specialized, describing the underlying thought process as follows:

[A]t the end there are sort of two parallel tracks going to find as to each different claim against either A, Prieto; B, Colt. And I'm going to need to change these Colt entities to Colt Specialized. But then at the end, they're guided by which ones they found to either [verdict form] 6 or 7, which is where they'll find -- they'll fill in the damages.

4

> Obviously, damages in 6 and 7, you don't collect twice on those. If the jury finds lost profits and finds it against only one of them, then the other one doesn't go on the judgment form. If they find it against both of them, then they both go on the judgment form.
>
> I should say if they find against only one of them then they both don't go on the judgment form unless in question 8 they find aiding and abetting or conspiracy. Then they may both go on, even though they'd have to find that the other committed an independent tort. That's how I kind of structured it.

**¶10**  The jury found for Appellants on: (1) their breach of contract, covenant of good faith and fair dealing, and fiduciary duty claims against Prieto; (2) their misappropriation claim against Specialized, finding that Specialized acted "willfully and maliciously"; and (3) their tortious interference and aiding and abetting claims against both Prieto and Specialized. The jury completed separate verdict forms against Prieto and Specialized respectively, awarding $230,050 on each form.

**¶11**  Appellees moved for judgment as a matter of law on several issues. As relevant to this appeal, they contended the jury improperly awarded damages for the 180 Hyperloop and 165 Lewis & Clark lanes and argued the separate damages awards were duplicative. Appellants applied for $318,669 in attorneys' fees and $11,543.75 in costs,[2] sought Rule 68 sanctions based on Appellees' rejection of two offers of judgment, and asked the court to double the damages award as exemplary damages.

**¶12**  The superior court granted Appellees' motion in part, concluding

> with respect to the . . . Hyperloop Phase III 180 loads and the Lewis & Clark Minnesota 165 loads, there was not evidence of a sufficiently solid expectation that Plaintiff would win the bids for that work. Importantly, no purchase order had been issued by Ameron for either of these jobs.

On this basis, the superior court reduced the damages award to $55,350 and found Prieto and Specialized jointly and severally liable for the full amount.

---

[2]  Appellants later conceded that computerized legal research charges are not taxable costs and reduced their costs claim by $520 to $11,023.75.

¶13        The superior court awarded Appellants $25,000 in attorneys' fees under A.R.S. § 12-341.01(A), finding only some of the claims on which they prevailed supported a fee award.  The court also commented that discovery had been "marred by a particularly high level of unnecessary antagonism" that either party "could have easily reduced . . . by reasonable responses," which led to "excessive fees being incurred by both parties."

¶14        The superior court awarded $9,438.62 in taxable costs, but declined to award Rule 68 sanctions because Appellants' first offer of judgment "allowed the Defendants to resolve the case only by collectively accepting the offer, which would have resulted in a payment of $120,000 in damages and another $60,000 in attorney fees."  The court did not address Appellants' second offer of judgment.  The court also declined to award exemplary damages under § 44-403(B).

¶15        Appellants moved for reconsideration of: (1) the denial of damages relating to 180 Hyperloop and 165 Lewis & Clark; (2) the attorneys' fees and costs award; (3) the denial of Rule 68 sanctions, citing both offers of judgment; and (4) Transportation's exclusion from the verdict forms.  The superior court denied relief.  Addressing the second offer of judgment for the first time, the court found it was invalid because it "left Defendant[s] exposed to unspecified amounts of attorney fees."

¶16        Appellants filed a timely notice of appeal following entry of a final judgment.  We have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

I.        180 Hyperloop and 165 Lewis & Clark Damages Claims

¶17        Appellants first contend judgment as a matter of law was improper on their 180 Hyperloop and 165 Lewis & Clark damages claims.  We review the grant of a motion for judgment as a matter of law *de novo*, viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Warner v. Sw. Desert Images, LLC*, 218 Ariz. 121, 130-31, ¶ 25 (App. 2008).  The "motion should be granted only if the facts presented in support of a claim have so little probative value that reasonable people could not find for the claimant."  *Johnson v. Pankratz*, 196 Ariz. 621, 623, ¶ 4 (App. 2000).

¶18        To establish tortious interference with a business expectancy, the plaintiff must show (1) the existence of a valid business expectancy, (2) the interferer's knowledge of the business expectancy, (3) the interferer intentionally induced or caused termination of the business expectancy,

and (4) resulting damages. *Dube v. Likins*, 216 Ariz. 406, 412, ¶ 14 (App. 2007). The business expectancy must be more than a "mere hope" and must be "evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Id.* at 412, 414, ¶¶ 14, 19 (citation omitted) (internal quotations omitted).

> A.      180 Hyperloop

**¶19**　　　　Appellants first cite several emails between themselves and Ameron that they say evince Ameron's "promise of the 180 [Hyperloop] loads" to them. The remaining emails center around a March 2016 dinner meeting regarding Hyperloop that "went well," causing Appellants to be "excited" about the potential future business.

**¶20**　　　　While there is ample record evidence to suggest Appellants "already had the 90 [Hyperloop] loads," Appellants' chief operating officer wrote that "things seem[ed] to be on the fence" as to the 180 Hyperloop loads as of June 13, 2016, the day Ameron told him they had "decided to go with a different hauler." And Ameron's purchasing manager testified that Appellants—and other brokers he had been communicating with—were "jumping the gun" in assuming they would receive the 180 Hyperloop lane. *See Marmis v. Solot Co.*, 117 Ariz. 499, 501-02 (App. 1977) ("[S]ubstantial damages cannot be recovered from one who interferes to prevent another from securing a contract for which he has bid, where the person receiving the bids has the right to reject any bid, so that there is nothing to show that the contract would have been secured in the absence of interference.") (quoting 45 Am. Jur. 2d, Interference, § 12 (1969) (internal quotations omitted).

**¶21**　　　　Appellants also cite testimony that (1) they did $3 million of business with Ameron between 2014 and 2016; (2) Ameron would have been less likely to switch carriers because Appellants had already hauled Hyperloop loads without problems; and (3) they received "reasonable assurances" that they would get the 180 Hyperloop loads. The cited "reasonable assurances" testimony amounts to little more than the members' "belief" that "the [180 Hyperloop] phase was going to go the same way because [Ameron was] happy." Moreover, undisputed Ameron testimony shows it always invited multiple brokers to bid on loads. And while the record suggests "most" of the 180 Hyperloop loads were eventually awarded, it appears most of them went to third parties.

      B.      165 Lewis & Clark

**¶22**      Appellants cite many of the same documents to contend they "had a valid expectancy" in receiving the 165 Lewis & Clark loads; we discussed those documents *supra*. They also cite two email chains between Specialized and Ameron and one document regarding loads Appellants had previously hauled on the same route. None of these documents provide any identifiable understanding that Appellants would receive the 165 Lewis & Clark loads, nor does the fact that Appellants, through Prieto, met with Ameron in Mexico. *Dube*, 216 Ariz. at 414, ¶ 19.

**¶23**      Appellants also cite testimony that they had done numerous loads for Ameron in the past on a "virtual handshake" as refuting the superior court's conclusion that they were "only one of many approved bidders on the [180 Hyperloop and 165 Lewis & Clark] loads." As discussed above, however, they presented no evidence of any such "virtual handshake" on either of the two lanes at issue.

**¶24**      Appellants also cite *Johnson* for the proposition that the superior court should have accepted their testimony regarding the 180 Hyperloop and 165 Lewis & Clark loads as true. In *Johnson*, we held that damages may be presumed upon showing commission of a battery. *Johnson*, 196 Ariz. at 623-24, ¶ 8. This is not a battery case, and Appellants offer no authority suggesting damages may be presumed on any of their claims. *See Dube*, 216 Ariz. at 412, ¶ 14 (plaintiff must show "damage suffered as a result of termination of the business expectancy").

**¶25**      For these reasons, we affirm the superior court's entry of judgment as a matter of law on Appellants' claims regarding the 180 Hyperloop and 165 Lewis & Clark loads and affirm its reduction of the damages award to $55,350, the amount proved for loss of the 90 Hyperloop loads.

II.      Superior Court Attorneys' Fees Award

      A.      Interwoven Causes of Action

**¶26**      Appellants also challenge the $25,000 fee award, first contending the superior court erroneously determined that only some of the claims on which they prevailed arose out of contract for purposes of A.R.S. § 12-341.01(A). We review the court's application of the statute to Appellants' claims *de novo*. *Ramsey Air Meds, LLC. v. Cutter Aviation, Inc.*, 198 Ariz. 10, 13, ¶ 12 (App. 2000).

¶27       "It is well-established that a successful party on a contract claim may recover not only attorneys' fees expended on the contract claim, but also fees expended in litigating an 'interwoven' tort claim."  *Id.* at ¶ 17. When determining whether claims are interwoven, the court should focus on whether the claims are based on the same facts and involve the same legal issues.  *See Sparks v. Republic Nat. Life Ins. Co.*, 132 Ariz. 529, 543 (1982) ("The fact that . . . legal theories are intertwined does not preclude recovery of attorney's fees under § 12-341.01(A) as long as the cause of action in tort could not exist but for the breach of the contract.").

¶28       In *Modular Mining Sys., Inc. v. Jigsaw Tech., Inc.*, 221 Ariz. 515 (App. 2009), we affirmed a fee award that included fees incurred on breach of contract, trade secret, tortious interference, and unfair competition claims:

> It is undisputed that the central claims in this litigation were the trade secrets claim and the breach of employment contract claims.  The record demonstrates these claims were based on the same set of facts, involving the common allegation that Jigsaw had misappropriated and made use of Modular's trade secrets.  Accordingly, as Jigsaw asserts, these claims "required the same factual development and research work," and "all depositions and all other work related to discovery and disclosure w[ere] necessary in connection with both claims."

> The legal issues concerning these claims were also intertwined and overlapping.  First, the trade secrets claim was premised on the asserted misappropriation of Modular's trade secrets, which was allegedly committed primarily by the individual defendants' breaching the confidentiality provisions of their employment agreements and using Modular's "inside information."  Similarly, whether the commands Modular claimed as trade secrets were in fact "trade secrets" for purposes of the Uniform Trade Secrets Act was likewise substantially dependent on the confidentiality provisions of the employment agreements.  Finally, Modular's unfair competition and tortious interference claims were based on the same set of facts as its trade secrets claim. As Jigsaw explains, those claims "were completely dependent upon Modular's ability to prevail on its misappropriation claims" and "required no separate legal services."

*Id.* at 522-23, ¶¶ 24-25. Here, Appellants alleged Prieto breached her employment contract by "providing trade secrets and other confidential information to Colt." Their breach of fiduciary duty, misappropriation, and tortious interference claims hinged on similar allegations, including:

> "Prieto and Colt would not have known of Plaintiffs' trade secrets, but for Prieto's prior employment at EMP";

> "Colt knew that Prieto owed Plaintiffs a duty to protect Plaintiffs' confidential, and/or proprietary information and to refrain from disclosing such information to third parties";

> "Colt's motivation for interfering with the Agreement—to unfairly compete with EMP—and means of interference—using confidential and/or proprietary information gained by Prieto—were both improper"; and

> "Prieto breached her fiduciary duties to both EMP and FWF by . . . improperly using and taking Plaintiffs' confidential and/or proprietary information, and by diverting a business opportunity of Plaintiffs for the benefit of herself and Colt."

¶**29** Appellees contend on appeal Prieto's employment agreement "played a small and separate portion in this case," but below, they argued that the tort claims "related to the misappropriation of trade secrets and/or tortious interference of a business expectancy with . . . Ameron." They further argued the tortious interference claim was premised on Appellants' contention that Specialized "continued to work with Prieto after receiving notice of the Agreement," causing her to breach it. Appellants also contended that Specialized and Prieto interfered with their relationship with Ameron "by using confidential and/or proprietary information of Plaintiffs."

¶**30** For these reasons, we conclude the superior court abused its discretion in reducing the attorneys' fees award based on "the mixed nature of the claims." We therefore vacate the fee award and remand for further consideration.

   B.  Inadequacy of Award

¶**31** We briefly address Appellants' other attorneys' fees and costs arguments to provide guidance on remand.

¶32        Appellants also contend the award was "wholly inadequate for the services rendered," citing *Roberts v. Malott*, 80 Ariz. 66 (1956). *Roberts* was a family law case in which § 12-341.01(A) did not apply. *Id.* at 69-70. Moreover, as noted *supra*, the superior court found Appellants' fee claim to be excessive given the "particularly high level of unnecessary antagonism" that plagued the proceedings. While the court did not solely blame Appellants for the "[f]ailure to moderate behavior," it observed on two occasions that "vitriol and personal attacks . . . have reached a point of distracting from otherwise important issues in the case" and that "[c]ooperation and courtesy continue to be too rare, bilaterally."

¶33        Appellants also contend the fee reduction, to the extent it was based on these discovery squabbles, was excessive because they only billed approximately $64,000 in fees during discovery. They cite no authority suggesting a trial judge must segment a fee claim in this manner. *See Vortex Corp. v. Denkewicz*, 235 Ariz. 551, 562, ¶ 39 (App. 2014) ("[T]he trial court has broad discretion to award and determine the amount of attorneys' fees under A.R.S. § 12–341.01(A).") (internal quotations omitted).

          C.        Attorneys' Fees and Costs Against Transportation

¶34        Appellants also contend the fee and cost award should be entered against Transportation based on the summary judgment ruling on the counterclaims. But Appellants did not prevail on any of their claims against Transportation. As such, the superior court did not abuse its discretion by declining to award fees against Transportation.

III.      Superior Court Taxable Costs Award

¶35        Appellants also contend the court improperly awarded only $9,438.62 of their $11,023.75 cost claim. A party cannot recover litigation expenses as costs without statutory authorization. *Schritter v. State Farm Mut. Auto. Ins. Co.*, 201 Ariz. 391, 392, ¶ 6 (2001). Taxable costs include:

          1.        Fees of officers and witnesses.

          2.        Cost of taking depositions.

          3.        Compensation of referees.

          4.        Cost of certified copies of papers or records.

          5.        Sums paid a surety company for executing any bond or other obligation therein, not exceeding, however, one per

cent on the amount of the liability on the bond or other obligation during each year it was in force.

6. Other disbursements that are made or incurred pursuant to an order or agreement of the parties.

A.R.S. § 12-332(A). We review the court's determination as to whether certain expenditures are taxable costs *de novo*. *Reyes v. Frank's Serv. and Trucking, LLC*, 235 Ariz. 605, 608, ¶ 6 (App. 2014).

**¶36** Appellants object to the superior court's failure to "detail which costs it determined were not taxable." In reviewing the award, we see three items in the statement of costs that are not recoverable under § 12-332(A). The largest of these is $1,436 in transcription costs incurred after trial had concluded, presumably for a trial transcript. The statement also includes $145 for transcription of a January 24, 2018 evidentiary hearing on a motion to compel production of certain emails in discovery. While deposition transcription costs are recoverable in superior court, trial and evidentiary hearing transcription costs are not; these costs are generally recoverable by the prevailing party as taxable costs on appeal. A.R.S. § 12-332(A)(2) (costs recoverable in superior court); A.R.S. § 12-331(4) (costs recoverable on appeal); *see Cyprus Bagdad Copper Corp. v. Ariz. Dep't. of Revenue*, 188 Ariz. 345, 347 (App. 1997); *see also Assoc. Finance Corp. v. Walters*, 107 Ariz. 315, 317 (1971) (finding that A.R.S. § 12-331 applies to the Arizona Court of Appeals).

**¶37** The statement also includes a $435.75 "Invoice for Services" from Frank Eifler, an EMP and FWF member who testified as a fact witness at trial. This entry is separate from the $546.85 charge for transcription of Mr. Eifler's deposition. Appellants cite no authority suggesting compensation for the "services" of a party's own fact witness falls within § 12-332(A).

**¶38** Removing these items from the statement of costs leaves $9,007.00. We therefore vacate the cost award and remand for entry of a modified cost award in the amount of $9,007.00.

IV.   Rule 68 Sanctions

**¶39** Appellants next contend the superior court improperly refused to award sanctions under Rule 68(g), which authorizes the court to award (1) reasonable expert witness fees, (2) double taxable costs, and (3) prejudgment interest on unliquidated claims from the date of the offer

against a party who rejects an offer of judgment and does not obtain a more favorable result. Ariz. R. Civ. P. 68(g).

¶40 Appellants made two offers of judgment, neither of which was accepted. We review the superior court's interpretation of the rule *de novo* but review its decision to not award sanctions for an abuse of discretion. *Berry v. 352 E. Virginia, LLC*, 228 Ariz. 9, 15, ¶ 31 (App. 2011).

A. The May 3, 2017 Offer of Judgment

¶41 Appellants' first offer of judgment included the following terms:

(1) against Transportation for $55,000 in damages and $25,000 in attorneys' fees and costs;

(2) against Specialized in the amount of $55,000 in damages and $25,000 in attorneys' fees and costs;

(3) against Prieto for $10,000 in damages and $10,000 in attorneys' fees and costs; and

(4) dismissing all counterclaims with prejudice.

Appellants expressly conditioned this offer "upon acceptance of the foregoing terms by all Offerees."

¶42 Because we vacate the attorneys' fees award, the superior court may reconsider whether to award sanctions based on this offer after determining what reasonable fees Appellants incurred as of May 3, 2017. Ariz. R. Civ. P. 68(g)(2); *see also Flood Control Dist. of Maricopa Cty. v. Paloma Inv. Ltd. P'ship*, 230 Ariz. 29, 48, ¶¶ 71-73 (App. 2012) (superior court has discretion to allocate sanctions in cases where an apportioned offer of judgment is made to multiple parties).

B. The August 11, 2017 Offer of Judgment

¶43 The superior court correctly determined the August 11, 2017 offer of judgment was invalid. That offer was for judgment

(1) against Transportation in the amount of $15,000 in damages plus "Offerors' reasonable attorneys' fees and costs, as determined by the Court";

(2) against Specialized in the amount of $15,000 in damages plus "Offerors' reasonable attorneys' fees and costs, as determined by the Court";

(3) against Prieto in the amount of $5,000 in damages plus "Offerors' reasonable attorneys' fees and costs, as determined by the Court"; and

(4) dismissal of all counterclaims with prejudice.

This offer of judgment was invalid because it sought attorneys' fees and costs without specifying a sum certain. Ariz. R. Civ. P. 68(b)(1); *see also Greenwald v. Ford Motor Co.*, 196 Ariz. 123, 125, ¶ 6 (App. 1999) ("[T]he offer must contain a specific monetary sum for attorneys' fees, if any have been sought in the action" and must be "specific enough to support entry of a judgment based on acceptance of the offer.").

**¶44** Appellants contend Appellees waived all objections to the second offer by not responding to it, citing *Boyle v. Ford Motor Co.*, 235 Ariz. 529, 532, ¶ 15 (App. 2014). *See* Ariz. R. Civ. P. 68(d)(2) (offeree must "serve on the offeror written notice of the objections" within ten days of service to avoid waiver of "the right to object to the offer's validity in any proceeding to determine sanctions under this rule."). But the offer at issue in *Boyle*, unlike the August 11 offer, "was specific as to the sum offered." *Id.* at 532, ¶ 14. Additionally, the untimely objection in *Boyle* was not to the certainty of the offer, but rather that it "nowhere expressed an offer to allow judgment to be entered in the action." *Id.* at 531, ¶ 9 (internal quotations omitted); *see also Greenwald*, 196 Ariz. at 126, ¶ 12 ("[T]he burden is not on the offeree to determine whether the offer meets the requirements of Rule 68 but rather on the offeror.").

**¶45** Moreover, cases decided after *Boyle* have continued to require that offers "'contain a specific monetary sum to settle the asserted causes of action' and 'be specific enough so that it can be determined, at the time of judgment, whether the offer or the judgment favored the offeree.'" *Williams v. King*, ___ Ariz. ___, ¶ 35, 2020 WL 372885, at *6 (App. Jan. 23, 2020), *as amended* (Jan. 29, 2020) (quoting *Greenwald*, 196 Ariz. at 125, ¶ 6). And even if we assumed Appellees waived their objections to the offer's lack of specificity, that would not preclude the superior court from determining whether the offer allowed it to "make an 'apples to apples' comparison between the offer and the judgment finally obtained" as required by law. *Cuellar v. Vettorel*, 235 Ariz. 399, 401, ¶ 5 (App. 2014) (citing *Hales v. Humana of Ariz., Inc.*, 186 Ariz. 375, 378 (App. 1996)).

**¶46**        Appellants also contend their second offer was proper under Rule 68(b)(2):

> If specifically stated, attorney's fees may be excluded from an offer.  If an offer that excludes attorney's fees is accepted and attorney's fees are allowed by statute, contract, or otherwise, either party may seek an award of attorney's fees.

The rule anticipates an offer that expressly does not include attorneys' fees and costs and reserves the issue for separate applications filed by either or both parties.  Here, the offer did not specifically exclude attorneys' fees or costs; it instead required Appellees to concede liability for an undefined amount.

## V.    Exemplary Damages

**¶47**        Appellants contend the superior court should have awarded "some amount" of exemplary damages because the jury found willful and malicious appropriation.  Pursuant to A.R.S. § 44-403(B):

> If willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subsection A.

The statute's use of "may" evinces the Legislature's intent to give courts discretion to decline to award exemplary damages even in cases where willful and malicious appropriation is found.  *See City of Chandler v. Ariz. Dep't. of Transp.*, 216 Ariz. 435, 440, ¶ 15 (App. 2007) ("[W]hen the Legislature makes the conscious choice to leave the word 'may' in the statute . . . we presume that the Legislature intended the statute to grant discretion as opposed to imposing a mandatory obligation.").  We find no abuse of that discretion in this case.

## VI.    Removal of Transportation from Verdict Forms

**¶48**        Appellants also contend the superior court should not have revised the verdict forms to exclude Transportation.  But Appellants' counsel told the court at the time its exclusion was "not as big a deal."  And when asked to describe the evidence against Transportation, counsel only argued that it and Specialized were "owned by the same one person, managed by the same one person."  Common ownership standing alone is

not a basis to impose liability.[3] *Cf. Keg Rest. Ariz., Inc. v. Jones*, 240 Ariz. 64, 73, ¶ 31 (App. 2016) ("A corporation will be treated as a separate entity unless sufficient reason appears to disregard the corporate form.").

**¶49**        We also reject Appellants' contention that "[i]t is reasonable to suppose the jury would be misled when they were instructed to consider whether all Defendants-Appellees are liable while verdict form 8 include[d] only [Prieto and Specialized]," citing the aiding and abetting final jury instruction. We do not make such suppositions on appeal; rather, "a jury verdict will not be overturned as a result of improper jury instructions unless there is substantial doubt as to whether the jury was properly guided in its deliberations." *Thompson v. Better-Bilt Aluminum Prod. Co.*, 187 Ariz. 121, 126 (App. 1996). Appellants present no evidence of any such doubt. Indeed, the tortious interference final jury instruction, which the court gave before the instruction Appellants allege was misleading, referred to Prieto and Specialized as the "Defendants."

VII.    Attorneys' Fees and Costs on Appeal

**¶50**        Both sides request their attorneys' fees incurred in this appeal under A.R.S. § 12-341.01(A). Appellees also request fees under A.R.S. § 44-404. In our discretion, we decline to award attorneys' fees to either side.

**¶51**        While Appellants are successful on the issue of attorneys' fees below, we conclude Appellees are the successful parties on balance and will award them their taxable costs upon compliance with Arizona Rule of Civil Appellate Procedure 21. *See Henry v. Cook*, 189 Ariz. 42, 43 (App. 1996) ("[A] party who succeeds on less than all claims is sufficiently successful to recover costs under the statute.").

---

[3]    Appellants cite the court's comment during trial that the line between Specialized and Transportation had been "blurred," but the court also stated that the two entities "are not alter egos." They also cite the court's comment that "there's evidence out there that a juror could say that the parties ignored the corporate niceties," but that comment referred to EMP and FWF, not Specialized and Transportation.

**CONCLUSION**

**¶52** We affirm the judgment except for the attorneys' fees and costs award to Appellants, which we vacate. We remand for further proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED: AA